KING, Circuit Judge:
 

 Defendant-appellant, Brian Foreman (Foreman), sued in state court for continued worker’s compensation benefits from the plaintiff-appellee, Allstate Insurance Company (Allstate), for an injury he allegedly received while working for Barras Lighting Electric Company. Ultimately, the state appellate court held that no further benefits were due to Foreman and entered a judgment requiring him to repay Allstate for the benefits received to date. Shortly thereafter, Foreman voluntarily filed a Chapter 7 bankruptcy petition. The bankruptcy court found Foreman’s debt to
 
 *124
 
 Allstate dischargeable. Upon appeal, the district court disagreed and held the debt nondischargeable. We reverse the district court.
 

 I.
 

 Foreman worked as a temporary employee for Barras Lighting Electric Company (Barras) from May 1982 until he was laid-off in June 1983. Approximately one week after he was laid-off, Foreman saw a Doctor Foret (Foret) concerning problems with his knees. Foret diagnosed Foreman as suffering chondromalacia and recommended surgery. Foreman did not elect to undergo surgery at that time.
 

 Barras rehired Foreman later in the summer of 1983. Larry Ted Trish (Trish), the Operations Manager for Barras, gave testimony at the state trial that Foreman asked about medical insurance at the time he was rehired and was told that there was a six month delay before he would be covered by the company hospitalization policy. According to Trish, Foreman responded by saying something — although the record is not entirely clear what — about worker’s compensation.
 

 Subsequently, on August 22, 1983, Foreman claimed that he injured himself on the job. He alleged that he heard his left knee “pop” as he ascended a ladder. One of his co-workers then took him to the hospital. From the hospital, Foreman requested to be taken to Foret’s office where Foret removed approximately 100 c.c.s of blood and fluid from Foreman’s knee. Foret testified before the bankruptcy court that this injury was of a type rarely resulting from the ascension of a ladder or steps, but that the condition of the knee was consistent with some type of trauma or injury having occurred within the prior 24 to 36 hours. Subsequently, in September 1983 and again in 1985, Foret performed surgery on Foreman. As a result of the alleged injury, Allstate ultimately paid $58,612.33 in worker’s compensation and medical expenses for Foreman.
 

 In June 1985, Foreman filed a claim in state court against Allstate for further worker’s compensation benefits and medical expenses. Allstate averred that Foreman had obtained worker’s compensation and medical expenses by filing false claims. At the trial in state court, two of Foreman’s co-workers, Joe Don Williams, Jr. (Williams) and David Goss (Goss), testified for Allstate. Both stated that they had heard Foreman complain about his knees prior to the alleged accident. Williams also commented that Foreman had told him that he planned to stage an accident. Additionally, Williams asserted that at some point after the supposed accident, Foreman had thanked him and Goss for not telling the owner of Barras that he had staged the accident.
 

 Although the state trial court noted that the evidence showed that Foreman had made statements to co-workers that he intended to fake an accident in order to ensure that his knee operation would be paid for by worker’s compensation, the state trial court ultimately awarded Foreman benefits. The state appellate court, however, reversed the state trial court and entered judgment in favor of Allstate. The Louisiana Supreme Court denied writ on September 21, 1987. Thus, the judgment against Foreman was upheld.
 

 On October 13, 1987, Foreman filed a voluntary Chapter 7 petition for bankruptcy. Subsequently, Allstate filed an objection claiming that the debt owed it by Foreman was not dischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code. The dischargeability issue was tried before the bankruptcy court on August 19, 1988. Though the bankruptcy court expressed some hesitation with regard to its conclusion, it particularly noted Foret’s testimony before it — supporting a finding of recent injury to Foreman’s knee — and concluded that the state trial court holding had been correct.
 
 [1]
 
 Thus, after commenting on the liberal nature of the dischargeability statute, the bankruptcy court found that
 
 *125
 
 Allstate had failed to meet its burden of proof and ruled the debt in question dis-chargeable.
 

 Allstate appealed the bankruptcy court’s judgment. The district court referred the case to a magistrate for a report and recommendation. The magistrate found that “the great weight of the evidence shows that Mr. Foreman manufactured this on-the-job ‘accident’f ]” and recommended that the district court reverse the finding of the bankruptcy court. On June 2, 1989, upon motion of Foreman, the report of the magistrate was stricken from the record. Nevertheless, on June 23, 1989, the district court entered an opinion that, after discussing the facts and background of the case, “adopt[ed]” the analysis in the report and recommendation of the magistrate as its own ruling. Thus, the district court reversed the judgment of the bankruptcy court and held Foreman’s debt to Allstate nondischargeable.
 

 II.
 

 In reviewing findings by bankruptcy courts, we and the district courts may only reverse factual findings where we determine that they are clearly erroneous.
 
 In re Killebrew,
 
 888 F.2d 1516, 1519 (5th Cir.1989). Legal determinations, of course, we review
 
 de novo. In re Compton, 891
 
 F.2d 1180, 1183 (5th Cir.1990). As this appeal hinges upon whether Foreman intentionally deceived Allstate — a factual determination — we apply the clearly erroneous standard.
 
 Cf. In re Rubin,
 
 875 F.2d 755, 758 (9th Cir.1989) (“This court expressly has decided that, at least for the purposes of determining the availability of a discharge in bankruptcy, a finding of intent to defraud a creditor is a finding of fact.”).
 

 III.
 

 As an initial matter, Foreman contends that the referral of Allstate’s appeal from the bankruptcy court’s determination of dischargeability to a magistrate resulted in error on three grounds: (1) such referral prevented an effective
 
 de novo
 
 review by the district court; (2) referral itself was error; and (3) reliance on the magistrate’s findings in reaching its own decision was error. Foreman relies on this court’s decision in
 
 Minerex Erdoel, Inc. v. Sina, Inc.
 
 for support. 838 F.2d 781 (5th Cir.),
 
 cert. denied,
 
 488 U.S. 817, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988). In
 
 Minerex,
 
 we held the referral of bankruptcy appeals to magistrates improper, even when such referral took place with the explicit permission of the parties involved.
 
 Id.
 
 at 786 (“It is reasonable to conclude that had Congress meant for its appeals scheme to include the potential for reference to a magistrate, Congress would have explicitly so provided.”);
 
 see also In re Evangeline Refining Co.,
 
 890 F.2d 1312, 1320 (5th Cir.1989) (“In
 
 Minerex ...,
 
 we examined the intricate scheme for bankruptcy appeals and determined that it did not allow bankruptcy appeals laid at the district court’s door to be referred to a magistrate.”).
 

 While we do not quibble with Foreman’s interpretation of
 
 Minerex
 
 as generally proscribing the reference of bankruptcy appeals to magistrates, we find that he has misapplied its teachings to the case at hand. Perusal of the record shows that though the district court initially referred the appeal to a magistrate, upon motion by Foreman, the magistrate’s report and recommendation was stricken from the record.
 
 [2]
 
 Some three weeks later, the district court entered an opinion of its own in which it found the debt owed Allstate by
 
 *126
 
 Foreman nondischargeable. The district court stated that “[a]fter thoroughly reviewing the case,” it found that the analysis contained in the stricken magistrate’s report was complete and accurate and “adopt[ed] the Report and Recommendation ... as its own ruling[.]” Though we do not condone the district court’s practice in striking the report and recommendation from the record and then adopting them as his own,
 
 [3]
 
 we are convinced by the district court’s statements concerning its review that it, indeed, had engaged in an independent consideration of the issues such that we need not reverse on this point.
 

 Foreman makes a number of other claims before this court. Under various guises, most of these address whether the district court committed error in reversing the bankruptcy court and finding his debt to Allstate nondischargeable. We focus on the finding of nondischargeability as the gravamen of Foreman’s claims, and— agreeing with Foreman — reverse the holding of the district court.
 
 [4]
 

 Under the current Bankruptcy Code, a number of exceptions to the dis-chargeability of debts exist. Such exceptions to dischargeability are narrowly construed and the burden of proving the non-dischargeability of a debt rests on the creditor seeking to prevent discharge.
 
 See, e.g., In re Love,
 
 577 F.2d 344, 348 (5th Cir.1978) (“The burden of proving nondis-chargeability was on [the creditor], and proof of one of the specified types of wrongdoing was an essential element under § 17(a)(2) of the Bankruptcy Act on which [the creditor] relied.”).
 
 [5]
 
 In its complaint, Allstate relied on section 523(a)(2)(A) of the Code:
 

 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 [[Image here]]
 

 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
 

 
 *127
 
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition[.]
 

 11 U.S.C. § 523(a)(2)(A). Generally, debts falling within section 523(a)(2)(A) are frauds involving “moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made, and that were relied upon by the other party [sic].” 3
 
 Collier on Bankruptcy
 
 ¶523.08[4] (15th ed. 1989) (footnotes omitted).
 

 Before the bankruptcy court, the parties in the instant case stipulated that, if called, all the witnesses who testified at the state court proceeding concerning Foreman’s eligibility for worker’s compensation would testify in the same manner as they had previously. Therefore, the parties agreed to submit the state trial transcript to the bankruptcy court. As a result, the only live witness before the bankruptcy court was Foret. Based on the record before it and the testimony of Foret, the bankruptcy court stated that it was in accord with the following conclusions of the state trial court:
 

 It may be argued that the [cause of] condition [sic] of plaintiff’s left knee noted by Dr. Foret on August 22, 1983, could have occurred away from the job as well as on it. While the Court might be pleased to accept such a showing, because of plaintiff’s stated intentions, there is not a word of testimony of record to point in that direction. Conversely, the type of heavy work being performed, along with climbing and descending the scaffolding, makes it more probably than not that Dr. Foret’s opinion is correct, whether or not any fall or other contact trauma occurred[.]
 
 [6]
 

 Hence, the bankruptcy court embraced the theory that Foreman was entitled to worker's compensation as he had suffered an on-the-job aggravation of a prior injury to his knee. In so holding, the bankruptcy court made an implicit finding against fraudulent intent on the part of Foreman. The bankruptcy court then concluded’ by finding that Allstate had “failed to carry its burden of proof[,]” and, thus, held that Foreman’s debt to Allstate was dischargea-ble.
 

 The bankruptcy court, however, neglected to specify the burden of proof that Allstate failed to maintain — that of offering clear and convincing evidence
 
 or
 
 that of producing a preponderance of the evidence.
 
 [7]
 
 Before continuing our review, we comment on this problem. Cognizant of the overarching policy in the Bankruptcy Code in favor of giving the debtor an opportunity for a fresh start, we endorse the application of the “clear and convincing” standard in the section 523(a)(2) discharge-ability context.
 
 [8]
 

 See, e.g.,
 
 3
 
 Collier on Bankruptcy
 
 at ¶ 523.05A (“In determining whether a particular debt falls within one of the exceptions to section 523, the statute should be strictly construed against the objecting creditor and liberally in favor of
 
 *128
 
 the debtor.”)- However, in relation to the instant case, if the bankruptcy court found that Allstate had failed to sustain its burden of proof under the preponderance of the evidence standard (a standard lower than that of clear and convincing evidence), then it could not have found that Allstate had met the clear and convincing evidence standard. Thus, our holding in the case at hand stands whether the bankruptcy court measured the proof offered by Allstate by the preponderance of the evidence standard or the clear and convincing evidence standard.
 

 In contrast to the bankruptcy court, the district court specifically recognized that the appropriate burden of proof was that of clear and convincing evidence. However, the standard it applied in its review of the bankruptcy court’s determination that Allstate had failed to meet its burden of proof is somewhat unclear. The district court, adopting the report of the magistrate,
 
 [9]
 
 made apparently conflicting statements on this point. Initially, the district court’s discussion states that its review of the record left it with the “firm conviction that a mistake has been committed[ ]”
 
 [10]
 
 and that the majority of the evidence “shows that Mr. Foreman manufactured this on-the-job ‘accident’.” Thus, the district court implied that it believed the bankruptcy court’s findings were clearly erroneous. Later in its opinion, however, the district court asserted that the bankruptcy court made no direct holding on whether an accident occurred and, therefore, that the clearly erroneous standard did not apply. The district court then concluded that no accident had occurred and went on to find that Foreman intentionally tried to deceive Allstate. Contrary to the district court's apparent contention otherwise, this holding flies in the face of that of the bankruptcy court.
 

 The record shows that there is, indeed, conflicting evidence concerning the events that actually occurred. However, Louisiana worker’s compensation law allows recovery not only for a new injury occurring on the job, but also for the aggravation of old injuries.
 
 See, e.g., Holmes v. International Paper Co.,
 
 559 So.2d 970, 976 (La.Ct.App.1990) (“A pre-existing condition does not bar a claimant’s recovery.... A claimant must, however, establish the aggravation of the pre-existing condition by a preponderance of the evidence.”);
 
 Duncan v. Department of Transp. and Dev.,
 
 556 So.2d 881, 886-87 (La.Ct.App.1990) (“Employers do not ‘pay for every flare-up’; but they must compensate claimants who prove a disabling aggravation of prior, asymptomatic conditions as a result of an on-the-job injury.”). As we noted
 
 supra,
 
 it is on these grounds that the state trial court found Foreman eligible for worker’s compensation and the bankruptcy court found
 
 *129
 
 the debt dischargeable. If Foreman were eligible for worker’s compensation under any theory, then — given the liberal construction of section 523 in favor of the debtor — the debt should be dischargeable. As the key issue in this case is whether Foreman’s debt to Allstate is dischargea-ble, the appropriate focus on review is whether the strict requirements for nondis-chargeability have been met and, hence, whether the bankruptcy court’s findings of aggravation of injury (and, thereby, its implicit finding against fraudulent intent on the part of Foreman) are clearly erroneous. Thus, a determination that the accident did not occur exactly as alleged by Foreman would not necessarily mean that his debt to Allstate was not dischargeable.
 

 Our review of the record convinces us that the bankruptcy court committed no clear error in endorsing the state trial court’s finding that Foreman aggravated a prior knee injury while at work. Foret gave testimony that supported this view. He testified that the amount of blood in Foreman’s knee and the fact that it had not yet clotted when he saw Foreman indicated a recent injury or trauma. Moreover, the evidence established that Foreman drove a standard automobile shortly before the accident supposedly occurred, and Foret testified that Foreman would have had great difficulty driving a standard car with the injury he saw on August 22,1983. In sum, while Foret stated that the type of injury suffered by Foreman rarely occurs in the manner described by Foreman, we cannot say that the bankruptcy court committed clear error in crediting Foret’s testimony as a whole and, thus, determining that Foreman’s debt to Allstate was dischargeable.
 
 [11]
 

 IV.
 

 For the foregoing reasons, we reverse the judgment of the district court.
 

 REVERSED.
 

 [1]
 

 . Foret had not given “live” testimony before the state trial court, although his deposition testimony had been admitted.
 

 [2]
 

 . We note that the district court struck the magistrate's report and recommendation despite the fact that it believed the instant case was distinguishable from
 
 Minerex
 
 and did not believe that the referral was incorrect:
 

 In
 
 Minerex,
 
 the District Court did not retain its powers of
 
 de novo
 
 review over the findings, the findings were, therefore, final. Referral of the instant matter to the Magistrate was made pursuant to 28 U.S.C. Section 636(b)(1) for a proposed finding and recommendation. The Magistrate’s finding and recommendation under 636(b)(1) is not a final ruling or judgment and this court must conduct a
 
 de novo
 
 review. The court respectfully disagrees with the mover’s contention that the Report and Recommendation of [the] Magistrate should be struck as an improper referral to the United States Magistrate. Nevertheless, the court will grant the Motion to strike and orders that the Report and Recommendation
 
 *126
 
 of [the] Magistrate ... be fully stricken from the record.
 

 However, as we conclude that the district court independently reviewed the instant case
 
 (see,
 
 infra), we pretermit any determination regarding the correctness of the district court’s views on the appropriateness of reference to a magistrate under the circumstances.
 

 [3]
 

 . Indeed, such behavior walks close to the line we set in
 
 In re Evangeline Refining Co.
 
 as unacceptable:
 

 [Plaintiff] contends that the district court evaded our holding in
 
 Minerex
 
 by referring to the magistrate and then recalling the reference but parroting the magistrate’s report and recommendation. Were the facts as [plaintiff] represents them to be, we might agree. However, the district court recalled the reference to the magistrate explicitly to comply with
 
 Minerex.
 

 890 F.2d 1312, 1320 (5th Cir.1989).
 

 [4]
 

 . We note, however, that one of Foreman’s arguments in relation to this point is that the district court erred in applying the doctrine of collateral estoppel to the state appellate court's decision. As we find no evidence that the district court applied such doctrine, we disagree. Rather, the district court, adopting the magistrate’s report, simply asserted that collateral es-toppel could possibly have been applied in resolving certain aspects of the case. We see no error in this statement. After all, this circuit has previously held that "[collateral estoppel— arising from an earlier nonbankruptcy suit’s determination of subsidiary facts that were actually litigated and necessary to the decision— may properly be invoked by the bankruptcy court to bar relitigation of those issues, even through the bankruptcy court retains the exclusive jurisdiction to determine the ultimate question of the dischargeability under federal bankruptcy law of the debt, upon the facts so based and other evidence before the court.”
 
 In re Shuler,
 
 722 F.2d 1253, 1255 (5th Cir.),
 
 cert. denied,
 
 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984);
 
 see also Carey Lumber Co. v. Bell,
 
 615 F.2d 370, 377 (5th Cir.1980) ("This court, of course, has no quarrel with the proposition ... that a bankruptcy court faced with a claim of nondischargeability under § 17 [predecessor of § 523, see
 
 infra
 
 note 5] and presented with a state court judgment evidencing a debt is not bound by the judgment and is not barred by res judicata or collateral estoppel from conducting its own inquiry into the character and, ultimately, the dischargeability of the debt.”).
 

 [5]
 

 . Although
 
 In re Love,
 
 577 F.2d 344, 348 (5th Cir.1978), refers to section 17(a)(2) of the prior Bankruptcy Code, it is well recognized that such cases apply to dischargeability issues under section 523(a)(2)(A) of the current Bankruptcy Code.
 
 See Brown v. Felsen,
 
 442 U.S. 127, 129 n. 1, 99 S.Ct. 2205, 2208 n. 1, 60 L.Ed.2d 767 (1979) (“Discharge provisions substantially similar to § 17 of the Bankruptcy Act appears in § 523 of the new law.”); 3
 
 Collier on Bankruptcy
 
 ¶ 523.08[4] n. 11 (15th ed. 1989).
 

 [6]
 

 . Earlier in the same opinion, the state trial court had stated:
 

 The testimony of Dr. Foret leaves the court no option except to accept that plaintiff had a work related aggravation of his knee condition and likely a crushing type injury to its internal parts.
 

 (footnote not in original).
 

 [7]
 

 . The state trial court explicitly (and correctly in the civil trial context) applied a preponderance of the evidence standard.
 

 [8]
 

 . In favoring this standard, we are in accord with at least five other circuits.
 
 See Chrysler Credit Corp. v. Rebhan,
 
 842 F.2d 1257, 1262 (11th Cir.1988) (Commenting on dischargeability under § 523(a)(6), the court held: "There is no question but that the party seeking to except a debt from discharge must prove the willfulness and maliciousness of the act by clear and convincing evidence.”);
 
 In re Van Horne,
 
 823 F.2d 1285, 1287 (8th Cir.1987) ("Creditors ... must prove each element of their claims by clear and convincing evidence.”);
 
 In re Phillips,
 
 804 F.2d 930, 932 (6th Cir.1986) ("A creditor seeking an exception from discharge under § 523(a)(2) must sustain this burden by clear and convincing evidence.”);
 
 In re Black,
 
 787 F.2d 503, 505 (10th Cir.1986) (“A creditor seeking to have a debt declared nondischargeable under this section must prove that it comes within the statute by clear and convincing evidence.”);
 
 In re Hunter,
 
 780 F.2d 1577, 1579 (11th Cir.1986) (“[T]he creditor [must] prove the debtor’s culpability by clear and convincing evidence.:’);
 
 In re Kimzey,
 
 761 F.2d 421, 423-24 (7th Cir.1985) ("The party objecting to discharge
 
 *128
 
 must prove the facts establishing each element by clear and convincing evidence.");
 
 see also
 
 3
 
 Collier on Bankruptcy
 
 at ¶ 523.08[5] (“At the time of the Code’s enactment in 1978, courts were holding that for purposes of bringing a debt within Section 17[a](2) of the Bankruptcy Act of 1898, the fraud had to be proved by clear and convincing evidence." (footnotes omitted)). The issue, however, is not a settled one. For instance, the Fourth Circuit recently embraced the preponderance of the evidence standard.
 
 See Combs v. Richardson,
 
 838 F.2d 112, 116 (4th Cir.1988) (Although the case directly involved dischargeability under § 523(a)(6), the court stated generally that ”[i]n the face of [the Bankruptcy Code’s] silence, courts may not imply a higher standard than the preponderance standard normally applied in civil proceedings.”);
 
 cf. In re Braen,
 
 900 F.2d 621 (3d Cir.1990) (explicitly limiting its ruling to exceptions to discharge sought under § 523(a)(6), the court held "that creditors claiming a nondischargeable debt under § 523(a)(6) must prove a malicious and willful injury inflicted by the debtor by a preponderance of the evidence” (footnote omitted)). Moreover, the Supreme Court recently granted
 
 certiorari
 
 on an Eighth Circuit case addressing this issue.
 
 In re Garner,
 
 881 F.2d 579 (8th Cir.1989),
 
 cert. granted sub nom. Grogan v. Garner,
 
 — U.S. -, 110 S.Ct. 1945, 109 L.Ed.2d 308 (1990).
 

 [9]
 

 . We note that the legal discussion involved in this case was actually written by the magistrate. As the district court used such analysis as its own (and the magistrate’s report was struck), however, we hereinafter attribute such analysis to the district court.
 

 [10]
 

 .
 
 See United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) (“A finding is 'clearly erroneous’ when although there is evidence to support it the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.").
 

 [11]
 

 . As we find that the district court erred in reversing the bankruptcy court on the issue of dischargeability, we need not reach Foreman’s alternative argument concerning the prescription of Allstate’s claim,