**In re Jack HULBERT, Debtor.**

**ITT FINANCIAL SERVICES, Plaintiff,**

**v.**

**Jack HULBERT, Defendant.**

**Bankruptcy No. 91–42338–H5–7. Adv. No. 91–4368.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Jan. 27, 1993.

Peter Riga, Houston, TX, for debtor.

Richard Lewis Abrams, Houston, TX, for plaintiff.

### ORDER

KAREN KENNEDY BROWN,
Bankruptcy Judge.

Before the Court is the complaint by creditor ITT Financial Services which seeks under 11 U.S.C. § 523(a)(2)(A) to prevent the discharge of its debt by debtor Jack Hulbert, alleging that the debtor obtained a loan in the amount of $2,250.00 by false representations and without any reasonable intent to repay the loan. In addition, plaintiff urges that discharge of its debt should be denied because the circumstances of the loan violated 11 U.S.C. § 523(a)(2)(C). Debtor denies that the loan was obtained under these circumstances.

After due consideration and review of the facts and law, the Court finds that the loan is dischargeable for the following reasons:

### I.

On January 28, 1991, ITT Financial Services sent an unsolicited letter to debtor inviting him to borrow $2,500.00 as a signature loan, without requiring security, further financial information, or credit references. (Defendant's Exhibit 3). Thereafter, on March 6, 1991, debtor borrowed $2,250.00 to be repaid over four years at 21.31% annual percentage rate. Debtor did not disclose to creditor that he was having financial problems at the time. There is no evidence that debtor was required to make any representations regarding his financial ability or intent to repay the loan as a condition to obtaining the money.

Immediately, debtor deposited the loan funds in his checking account. The deposit was used to pay a number of ordinary expense items. The money was spent within two weeks.

Thereafter, on March 22, 1991, debtor filed the petition for relief in case number 91–02338–H5–7. The debt to ITT was scheduled as an undisputed debt in the petition. At the creditor's meeting, the debtor announced his intention to reaffirm the debt to ITT under 11 U.S.C. § 524(c). Later, however, debtor concluded that the repayment schedule required by ITT was beyond his means and declined to reaffirm the debt.

Mrs. Hulbert, a non-debtor spouse, sent a check to debtor's lawyer in the amount of $75.00 on March 8, 1991. Debtor, Mrs. Hulbert, and counsel for debtor testified that this represented payment for a prior representation of Mrs. Hulbert on another matter. Debtor testified that he spoke with his attorney in early to mid-March regarding his financial situation. He told counsel then that he wanted to reaffirm the debt to ITT. His intent never changed until it was evident that he could not satisfy the reaffirmation payout schedule requested by ITT.

Debtor testified he was compelled to file bankruptcy because he was unemployed for some length of time in 1990. In 1991, his wife gave birth to an additional child. His wife was then disabled and unable to return immediately to work. When he received the certificate from ITT inviting him to borrow $2,500.00, he intended to use the money to forestall bankruptcy. He repaid some past due bills as well as current bills. Nevertheless, debtor was unable to obtain sufficient relief and was compelled to file on March 22, 1991.

### II.

Plaintiff relies on 11 U.S.C. § 523(a)(2)(A) and (C) which state in part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . .

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor, an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.);

■ Section 523(a)(2)(C) relates to "extensions of consumer credit under an open-end credit plan ..." After reviewing the exhibits in the case at bar, the Court concludes that the loan at issue is not an extension of consumer credit under an open-end credit plan as defined in the Consumer Credit Protection Act, 11 U.S.C. § 1601 *et seq.* Instead, this is a single-loan transaction between the parties. Moreover, there was no expenditure for luxury goods or services as contemplated by the statute. Therefore, there is no presumption of nondischargeability under 11 U.S.C. § 523(a)(2)(C).

Consequently, creditor must demonstrate that discharge of its debt should be denied because: (1) debtor obtained money by false representations; (2) debtor made the false representations with intent to deceive creditor; and (3) creditor relied on the false representation. 11 U.S.C. § 523(a)(2)(A);

*In re Allison,* 960 F.2d 481, 483 (5th Cir. 1992).

The Supreme Court has settled the creditor's burden of proof on the issues. After *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), plaintiff must prove its case by a preponderance of the evidence. However, it remains true that due to the nature of the bankruptcy laws, exceptions to dischargeability must be construed narrowly. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Foreman,* 906 F.2d 123, 127–28 (5th Cir.1990) ("'... the statute should be strictly construed against the objecting creditor and liberally construed in favor of the debtor.'") (quoting 3 Colliers on Bankruptcy ¶ 523.05A); *First Nat'l Bank of Mobile v. Roddenberry,* 701 F.2d 927, 932 (11th Cir.1983).

■ Under 11 U.S.C. § 523(a)(2)(A), the lender must show reliance but the case law does not require such reliance to be reasonable. *In re Allison, supra* at 485; *In re Ophaug,* 827 F.2d 340, 342–43 (8th Cir.1987); *In re Stewart,* 91 B.R. 489, 495 (Bankr.S.D.Iowa 1988); *In re Fosco,* 14 B.R. 918 (Bankr.D.Conn.1981); *but see, contra, In re Hunter,* 780 F.2d 1577 (11th Cir.1986); *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985). Credit card cases involve reimbursement to a third-party merchant by the card company. This attenuated credit relationship leads courts to infer reliance from mere use of the card. *Citicorp Credit Services, Inc. v. Hinman,* 120 B.R. 1018, 1022 (Bankr.D.N.D.1990); *Ranier Bank v. Poteet (In re Poteet),* 12 B.R. 565 (Bankr.N.D.Tex.1981). However, the case at bar involves a direct borrowing relationship between lender and borrower. Therefore, creditor must show that it relied on debtor's fraudulent representation in issuing the loan. *Ophaug, supra* at 343. There was no direct evidence from creditor on this issue.

■ Creditor argues that debtor was insolvent when the loan was made, failed to disclose that fact to creditor, had no intent to repay the loan, and had no reasonable prospect of being able to do so in the future. In support, creditor points this

Court to cases involving excessive use of credit cards or exceeding the credit limit prior to bankruptcy. *See e.g., In re Meeks,* 139 B.R. 559 (Bankr.M.D.Fla.1992). Creditor urges that since the certificate or invitation for a loan sent by ITT to debtor in March 1991, is akin to credit card borrowing, such cases are relevant to the case at bar.

Although all lenders are ostensibly required to prove the usual elements under Section 523(a)(2)(A) to show a nondischargeable debt, some courts find that debtor's use of a credit card is an implied representation of both solvency and intent to repay. *FCC Nat'l Bank v. Bartlett,* 128 B.R. 775 (779–80) (Bankr.W.D.Mo.1991); *Comerica Bank–Midwest v. Kouloumbris,* 69 B.R. 229, 230 (N.D.Ill.1986); *In re Stewart,* 91 B.R. 489, 494 (Bankr.S.D.Iowa 1988); *In re Schmidt,* 36 B.R. 459, 460 (E.D.Mo.1983); *In re Buford,* 25 B.R. 477, 481 (Bankr.S.D.N.Y.1982). On the issue of intent in the context of credit cards, these courts look to a number of factors such as length of time between the loan and the bankruptcy filing; sharp change in the buying habits of the debtor; financial sophistication of the debtor; employment status of the debtor; whether an attorney was consulted concerning the filing of the bankruptcy before the charges were made; whether the purchases were made for luxuries or necessities; or whether the debtor was "hopelessly insolvent" at the time. *In re Preece,* 125 B.R. 474 (Bankr.W.D.Tex. 1991); *In re Kramer,* 38 B.R. 80, 83 (Bankr.W.D.La.1984).

*In re Meeks, supra,* cited by creditor, is a Chapter 7 case in which the debtor obtained a cash advance of $5,000 on his credit card, paid no further monies on account, and filed bankruptcy six months later. The bankruptcy court found that denial of discharge of the debt was proper under Section 523(a)(2)(A) because debtor knew or should have known he would not be able to meet his obligations. *Id.* at 561.

What creditor urges then is the application of the implied fraud theory to a noncredit card loan. Creditor argues that failure to disclose hopeless insolvency or lack of reasonable intent to repay equates to fraud.

A review of the Fifth Circuit law on the question of the viability of the creditor's implied intent theory must begin with *Davison–Paxon Co. v. Caldwell,* 115 F.2d 189 (5th Cir.1940), *cert. denied* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941). *Davison–Paxon* was decided under Section 17, sub. a(2) of the Bankruptcy Act of 1898 which provided a limited exception to the discharge of debts in bankruptcy "for obtaining money or property by false pretenses or false representations ..." 11 U.S.C. § 35 sub. a(2) (1976). In *Davison–Paxon* debtor purchased merchandise directly from her creditor over an extended period of time. The creditor sought to set aside the discharge of its debt alleging debtor was insolvent, had no intent to pay for the goods purchased, and had failed to inform her creditor of her insolvency, all of which the creditor argued amounted to fraud. The bankruptcy court found that such allegations were not grounds for denial of discharge of the debt. While noting its reservations about the nature of the debtor's actions, the Fifth Circuit considered the application of the Georgia rule of law that a purchase by an insolvent debtor with no present intent to repay is deceitful and subject to rescission. Nevertheless, the court concluded that absent more, debtor's failure to inform her creditors of her insolvency and her present intention not to repay did not constitute misrepresentation or fraudulent pretense to bar discharge of the debt. *Id.* at 189.

*Davison–Paxon* has been criticized on the grounds that it rewards fraudulent behavior. Case Comment, 39 Mich.L.R. 812 (1941). Indeed, a subsequent panel of the Fifth Circuit has suggested that *Davison–Paxon* has been narrowed because of the change in credit transactions in the modern world. *Sears, Roebuck & Co. v. Boydston, (In re Boydston),* 520 F.2d 1098, 1101 (5th Cir.1975).[1] However, since without an en banc hearing, one panel may not overrule another, this Court remains bound by *Davison–Paxon. See e.g. Sears, Roebuck &*

---

1. *Boydston* has been quoted for the holding that fraudulent intent may be inferred from hopeless insolvency. *In re Preece infra* at 478. However, *Boydston* upholds the findings by the trial

*Co. v. Wood (In re Wood),* 571 F.2d 284 (5th Cir.1978).

In *First Nat'l Bank of Mobile v. Roddenberry,* 701 F.2d 927 (11th Cir.1983), the court found that *Davison–Paxon* retains its validity at least as to one-on-one credit relationships such as in the case at bar. The Eleventh Circuit concluded:

> The element of risk is inherent in the issuance of bank credit cards. Our "creditcard economy" encourages widespread voluntary risk-taking on the part of those issuing cards. Once credit cards are issued (if not fraudulently obtained), the bank has agreed to trust the cardholder and to extend credit, and once credit is extended, the bank must decide when and if credit will be revoked. It is not the function of courts to determine when a bank ought to revoke credit. It also is of little consequence that the bank can show that the terms and conditions said to apply to use of the card have been violated. The mere breach of credit conditions is of minimum probative value on the issue of fraud because banks often encourage or willingly suffer credit extensions beyond contractual credit limits. Indeed, banks have a definite interest in permitting charges beyond established credit limits because of the high finance charges typical in such transactions. *In re Talbot,* 16 B.R. 50, 52 (Bkrtcy.M.D.La. 1981). Banks are willing to risk non-payment of debts because that risk is factored into the finance charges. Because the risk is voluntary and calculated, section 17a(2) should not be construed to afford additional protection for those who unwisely permit or encourage debtors to exceed their credit limits.

*Id.* at 932.

Declining to follow *Roddenberry,* the Ninth Circuit Bankruptcy Appellate Panel in *Citibank South Dakota, N.A. v. Dougherty,* 84 B.R. 653, 18 C.B.C.2d 471 (9th Cir.B.A.P.1988), took a third direction regarding credit card cases. The panel also declined to adopt the implied representation theory because it elevates credit card issuers over other creditors. Moreover, it directs the court to infer the existence of both the representation and the reliance elements of fraud on which the creditor would otherwise have the burden of proof. Instead, the panel adopted a middle ground. Creditors who revoke their credit cards and communicate the revocation to debtors are entitled to a finding of nondischargeability as to subsequent charges. However, the card issuer still must prove that prerevocation charges were obtained by all the elements of actual fraud. *Id.* 84 B.R. 653, 18 C.B.C.2d at 475.

Again, the Sixth Circuit in *In re Ward,* 857 F.2d 1082, 1085 (6th Cir.1988), rejected the implied representation theory, finding:

> However, even if each credit card charge constituted 'representation' of ability to pay, the case law and legislative history make it clear that a credit check must be conducted at some point; otherwise an exception to discharge is unavailable. A contrary rule would 'place credit card companies in a special category of creditors and makes their [credit card] debts too easily nondischargeable.' *In re Carpenter,* 53 B.R. 724, 728 (Bankr.N.D.Ga. 1985). This court rejects extending preferential protection, at the expense of other unsecured creditors to credit card companies which profit from extending consumer credit at the risk of nonpayment, which risk is factored into finance charges which are higher than the rates charged by other lenders.

*In re Ward, supra* at 1085.

In the case at bar there is no evidence that the creditor did a credit check on debtor before issuing the invitation letter.

*Roddenberry* and *Davison–Paxon* considered the Bankruptcy Act of 1898. While no case from the Fifth Circuit directly considers whether the 1978 Bankruptcy Code overturns *Davison–Paxon* regarding implied fraud, Colliers suggests no change occurred.

> The addition of the words "or actual fraud" probably makes no change in the law as it existed prior to enactment of the Code because false pretenses and

courts that creditors failed to show intent by any means. The trial courts relied on *Davison–Paxon* for the standard of proof required.

representations were construed to mean acts involving moral turpitude or intentional wrong; fraud implied in law, which may exist without imputation of bad faith or immorality, was held to be insufficient. (Citations omitted).

3 Colliers Bankruptcy Manual ¶ 523.08 (15th ed.) (citations omitted); *see also Neal v. Clark*, 95 U.S. 704, 5 Otto 704, 24 L.Ed. 586 (1878); *Forsyth v. Vehmeyer*, 177 U.S. 177, 20 S.Ct. 623, 44 L.Ed. 723 (1900); *In re Hunter*, 780 F.2d 1577 (11th Cir.1986); *Gabellini v. Rega*, 724 F.2d 579 (7th Cir.1984).

While the Fifth Circuit was troubled by the conduct of the debtor in *Davison–Paxon*, its language was strong. Moreover, in view of the Supreme Court opinions, *Neal v. Clark; Strang v. Bradner*, 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885) and *Davison–Paxon*, this Court would hesitate to conclude that the law in this jurisdiction is that an insolvent debtor who fails to disclose his insolvency at the time of the loan is susceptible, without more, to a finding of fraud even if creditor shows no realistic ability to repay.

This Court is concerned, as was the Bankruptcy Appellate Panel in *Dougherty*, that the implied fraud theory shifts the burden of proof from creditor to debtor contrary to Federal Rules of Bankruptcy Procedure 4005. The courts carefully scrutinize such judicial burden shifting. *See Dazzio v. F.D.I.C.*, 970 F.2d 71 (5th Cir. 1992) (board of directors of FDIC may not rely on inference in administrative penalty hearing to shift F.D.I.C. burden of proof regarding defendant's financial condition to defendant); *Halliburton v. Commissioner*, 946 F.2d 395, 398 (5th Cir.1991) (allegations of improper burden shifting by tax court are unfounded); *see also Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The inferences at issue do more than shift the burden of going forward to the debtor once creditor makes a prima facie showing of nondischargeability. *In re Reed*, 700 F.2d 986 (5th Cir.1983). The trial court must infer both reliance and fraudulent intent from the creditor's proof of the credit card transaction, default, and subsequent bankruptcy. For these reasons, this Court declines to follow the implied fraud theory in this case.

■ Consequently, this Court must review the facts under traditional principles of actual fraud, recognizing that fraud is rarely proven directly. In addition, it is necessary to remember that fraud must exist "at the inception of the debt." 3 Colliers, *supra* at ¶ 523.08. Moreover,

> Failure of a commitment made in good faith to make payment does not constitute actual fraud. Neither representations of fact that will exist in the future nor mere promises, though false and intended to deceive, afford the basis of actionable fraud.

3 Colliers, *supra* at ¶ 523.08.

■ Consequently, if the debtor had the intent to repay when the loan was made, but changed his mind and breached the contract, no fraud exists. *In re Bercier*, 934 F.2d 689 (5th Cir.1991); *In re Wood, supra* at 285.

■ On the issue of fraudulent intent, facts weighing against debtor are: (1) that at the time the loan was made, debtor's employment was unsteady; (2) debtor faced a number of financial burdens; (3) debtor had some financial sophistication; and (4) bankruptcy came soon after the loan was made. Factors in debtor's favor are: (1) debtor was employed at the time of the loan; (2) an attorney was not consulted until after the loan was made; (3) the loan was used to satisfy necessities, not luxuries; (4) initially, debtor attempted to reaffirm the loan; (5) debtor had never taken bankruptcy before; and (6) there was no showing of similar loan history or behavior as to other creditors. This Court credits debtor's testimony that he intended to repay the loan when made.

The Court concludes that creditor has not born its burden of proof by a preponderance of the evidence to demonstrate debtor committed actual fraud. 11 U.S.C. § 523(a)(2)(A). Creditor relies on a theory of implied representation. Since this Court may not follow that theory in this jurisdiction, proof must be of actual fraud.

■ However, even if this Court imports the implied intent theory into a non-credit card case and infers fraudulent intent, debtor showed a repeated intent to repay

until it became obvious to him that creditor's repayment schedule was impossible to meet. Having satisfied his remaining debts and with the prospect of his wife returning to work in the future, the Court concludes that his financial situation was not impossibly hopeless at the time of the loan. On these facts, this Court does not find that the creditor proved fraud.