**In re Raymond ORSINE, Debtor.**

**John/Lee Stifter, Plaintiffs,**

v.

**Raymond Orsine, Defendant.**

**No. 99–3048.**

United States Bankruptcy Court,
N.D. Ohio.

June 14, 2000.

Gino Pulito, Elyria, OH, for Plaintiffs.

### *DECISION AND ORDER*

RICHARD L. SPEER, Chief Judge.

In the above captioned adversary complaint, the Plaintiffs, John and Lee Stifter, seek to have a debt owed to them by the Defendant/Debtor, Raymond Orsine, held nondischargeable. The statutory basis upon which the Plaintiffs rely for their cause of action is 11 U.S.C. § 523(A)(2)(A), which provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

On January 12, 2000, a Trial was held on this matter at which time it was established that the amount in controversy was Twenty-two Thousand Seven Hundred Forty dollars ($22,740.00). In addition, at the Trial the following factual information was elicited from the Parties:

In 1997 the Plaintiffs, who had previously conducted business with the Defendant, entered into a contract with the Defendant to install windows on a building complex owned by the Plaintiffs. As a part of this contract, the Defendant, who was doing business as Home Improvements Direct, was to place an order with the Alside Supply Center to have the windows manufactured. For their part, the Plaintiffs agreed and thereafter made a down payment to the Defendant in the amount of Twenty Thousand Seven Hundred Forty dollars ($20,740.00), the amount of which represented approximately one-half (½) of the total cost to manufacture and install the windows. (The evidence presented in this case also shows that the Plaintiffs paid to the Defendant a further Two Thousand dollars ($2,000.00) as part of a subsequent agreement involving the installation of new siding.)

Thereafter, according to the Debtor, an order was placed with the Alside Supply Center to manufacture the windows necessary for the Debtor to complete his contract with the Plaintiff. In support of this assertion, the Defendant introduced into evidence a canceled Ten Thousand dollar ($10,000.00) check that he had made payable to the Alside Supply Center. The Plaintiffs, however, contend that the Defendant never placed, or intended to place an order for their windows, and to substantiate this assertion, the Plaintiffs provided for the Court a "Statement of Accounts" which shows that the Ten Thousand dollar ($10,000.00) check deposited by the Defendant at the Alside Supply Center was utilized for purposes other than ordering windows for the Plaintiffs. Specifically, the "Statement of Accounts" shows that the deposit was utilized by the Alside Supply Center to satisfy other obligations due and owing by the Defendant. In additional support of their position, the Plaintiffs also presented to the Court a post-trial affidavit in which the Office/Credit Manager from the Alside Supply Center made the following declarations:

In 1997 Raymond Orsine, d.b.a. Home Improvements Direct, had an account with Alside.

In November of 1997 Ray Orsini [sic] came into the warehouse with a window order for $40,000.00. He was told his

credit line would not support such an order. He was also told in order to place such an order, a deposit of $20,000.00 was needed. A $20,000.00 deposit was never received and the windows were never ordered.

In February of 1998, Mr. Orsini [sic] contacted us and advised us that the window order was canceled by the customer.

A refund check for $3,092.82 was sent to Home Improvements Direct in August 1998, which reflected the credit balance on the account.

That Alside, did not order the windows and does not currently have any windows on order for Home Improvements Direct.

With regards to the above-mentioned refund check, it is undisputed that the Plaintiffs were not in any way the recipients of such funds.

### LEGAL ANALYSIS

It is a long-standing principle of bankruptcy jurisprudence that only those debts honestly incurred are entitled to be discharged in bankruptcy. Section 523(a)(2)(a) embodies this principle by excluding from a bankruptcy discharge those debts incurred by a false pretense, a false representation, or actual fraud. *Cohen v. de la Cruz*, 523 U.S. 213, 217, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998). Under § 523(a)(2)(A), this Court has repeatedly held that in order for a creditor to sustain a nondischargeability action, the creditor bears the burden to prove, by a preponderance of the evidence, that five different elements are met. These elements are: (1) the debtor made false representations, (2) the debtor knew such representations to be false at the time they were made, (3) the representations were made with the intent to deceive the creditor, (4) the creditor relied on the representations, and (5) the creditor's loss was the proximate result of the misrepresentation having been made. *Fifth Third Bank of Northwest Ohio, N.A. v. Spitler (In re Spitler)*, 229

B.R. 1, 4 (Bankr.N.D.Ohio 1998); *citing In re Phillips*, 804 F.2d 930, 932 (6th Cir. 1986). With respect to the first and last of these elements, the Court finds, without further analysis, that the Plaintiffs have met their requisite burden of proof considering that it is indisputable that the direct source of the Plaintiffs' pecuniary loss was the Defendant's failure to install the windows as promised. The Court thus now turns its attention to the remaining three requirements of § 523(a)(2)(A).

Any inquiry as to whether a person acted fraudulently or otherwise wrongly by giving a false representation, necessarily entails an examination of that person's state of mind. Elements two and three from above exemplify this prerequisite by requiring that for a debt to be held nondischargeable under § 523(a)(2)(A), a debtor must, with knowledge of a statement's falsity, have acted with the intent to deceive a creditor. *Colonial Nat'l Bank v. Leventhal (In re Leventhal)*, 194 B.R. 26, 30 (Bankr.S.D.N.Y.1996) (the statutory language of § 523(a)(2)(A) focuses on a debtor's state of mind). When determining whether such elements are met, a bankruptcy court is to consider all the relevant facts and circumstances of the case, as it is highly unlikely that a debtor will ever actually admit they knowingly intended to deceive a creditor. *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (8th Cir. BAP 2000).

With respect to the second element of § 523(a)(2)(A), it is clear that any debtor who does not intend to perform a contract from its inception has knowingly made a false representation. *See ITT Financial Services v. Hulbert (In re Hulbert)*, 150 B.R. 169, 175 (Bankr.S.D.Tex. 1993) (if debtor has the intent to repay a loan at the time it is made, but later changes his mind and breaches the contract, no "fraud" exists within meaning of the fraud exception to discharge). When dealing with construction contracts, such a determination can be necessarily surmised by ascertaining whether the contractor un-

dertook any of the preliminary steps necessary to complete performance. Stated in another way, it is a reasonable inference that a contractor who intends to perform in accordance with his or her contractual obligations will, at the very least, take the initial steps to do so.

■ Applying this principle to the facts of this case, it is first observed that the Defendant never placed an order for the windows he needed to complete his contractual obligation with the Plaintiffs. Once more, the Defendant failed to pay to the Alside Supply Center even one half (½) of those funds he had received from the Plaintiffs as a deposit. Therefore, given these considerations, it is clear that the Defendant never undertook any of the preliminary steps necessary to perform his contractual obligations to the Plaintiffs. Consequently, the Court must find that the Defendant never actually intended to perform his contractual obligations with the Plaintiffs, and thus an inference arises that the Defendant, in violation of the second element of § 523(a)(2)(A), knowingly made a false statement.

■ Notwithstanding, a debtor's failure to take the initial steps to perform a contractual obligation does not automatically denote that the debtor actually intended to deceive a creditor for purposes of holding such a debt nondischargeable under the third requirement § 523(a)(2)(A). This is because the type of fraud contemplated by the discharge provisions of § 523(a) sounds in tort and not in contract, and therefore a mere promise to be carried out in the future is not sufficient to bar the discharge of a debt, even though there is no excuse for the subsequent breach. *Jack Master, Inc. v. Collins (In re Collins)*, 28 B.R. 244, 246–47 (Bankr. W.D.Okla.1983). Nevertheless, it is apparent that at some point a contractor who knowingly makes false statements will be found to have intended to deceive a creditor. Obviously, the point at which this occurs depends upon the particular circumstances of a case as determinations concerning a party's intent to deceive are necessarily case specific. *Advanta Nat'l Bank v. Kong (In re Kong)*, 239 B.R. 815, 822–23 (9th Cir. BAP 1999).

■ For purposes of the instant case, the Court feels that such a point occurred when the Defendant accepted money from the Plaintiffs. In particular, the Court feels that once a contractor accepts money for his or her services, that contractor must take reasonable steps to protect that creditor's interest, and that the failure to do so, coupled with a contractor's false representation(s), will rise to the level of an intentional deception for purposes of § 523(a)(2)(A). Consequently, in this case, as it is clear that the Defendant did not place an order for the windows he was to install, and thereafter the Defendant did not make any effort to safeguard the money the Plaintiffs had entrusted to him, the Court holds the Plaintiffs have met their burden of proof with respect to the third element of § 523(a)(2)(A).

Despite these holdings, the Defendant maintains that any presumption that may arise in favor of the Plaintiffs satisfying elements two and three of § 523(a)(2)(A) is rebutted on account of the Ten Thousand dollar ($10,000.00) deposit he made to the Alside Supply Center. Simply put, the Defendant asserts that he would not have deposited this money had he knowingly intended to deceive the Plaintiffs with regards to performing his obligations under the contract. However, for two reasons, the Court must reject this argument. First, the Ten Thousand dollar ($10,000.00) deposit represents less than one-half of the funds that the Plaintiffs had advanced to the Defendant, and the Defendant has been unable to satisfactorily account for the missing funds. Second, the Defendant's "Statement of Accounts" from the Alside Supply Center shows that a large portion of the Ten Thousand dollar ($10,000.00) deposit was used to fund projects not related to the Defendant's contractual obligation vis-a-vis the Plaintiffs.

The final requirement for this Court to address is the fourth element of § 523(a)(2)(A) which requires that for a debt to be held nondischargeable, a creditor must have actually relied upon the representation. In *Field v. Mans,* the Supreme Court of the United States addressed this requirement and held that a creditor's reliance on a debtor's misrepresentation need be only justifiable, not reasonable, to except such a debt from discharge under § 523(a)(2)(A) of the Bankruptcy Code. 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). According to the Supreme Court, "a person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." *Id.* at 70, 444, 116 S.Ct. 437. In addition, the Supreme Court went on to further explain that justifiable reliance is simply a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases. *Id.* at 70–71, 116 S.Ct. at 444. The Supreme Court, however, did caution that compliance with the justifiable reliance standard is not automatic. Specifically, the Court stated that, "a person is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* (internal quotations and citations omitted).

Based upon these statements by the Supreme Court, this Court is left with no doubt that the Plaintiffs were justified in relying upon the Defendant's representations. In particular, when one considers that the Plaintiffs and the Debtor had formerly, and upon amicable terms, conducted business with one another, it seems apparent to the Court that the Plaintiffs were justified in relying upon the Defendant's representations. Additionally, the Court observes that the Plaintiffs were only required to pay, as a down payment, approximately one-half (½) of the cost of the window installation project. Thus, as many similar contracts contain such a term, there does not appear to be anything out of the ordinary with the Parties' contract which would have alerted the Plaintiffs (or any other party for that matter) to the problems they were to encounter.

Therefore, for the above stated reasons, the Court finds that the Defendant is not entitled to receive a bankruptcy discharge with respect to his obligation owing to the Plaintiffs. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the debt of the Defendant, Raymond Orsine, to the Plaintiffs, John and Lee Stifter, be, and is hereby, determined to be a NONDISCHARGEABLE debt pursuant to 11 U.S.C. § 523(a)(2)(A).