In re Willie Y. KONG, Debtor.

Advanta National Bank, Appellant,

v.

Willie Y. Kong, Appellee.

BAP No. NC–98–1586–RyMeR.
Bankruptcy No. 97–70702 JD.
Adversary No. 98–4211 AJ.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 23, 1999.

Decided Sept. 9, 1999.

Anne L. Keck, Ahern & Keck, Santa Rosa, CA, for Advanta National Bank.

James P. McBride, Hayward, CA, for Willie Y. Kong.

Before RYAN, MEYERS, and RUSSELL, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

After Willie Y. Kong ("Debtor") filed his chapter 7[1] bankruptcy petition, creditor Advanta National Bank ("Advanta") filed a complaint (the "Complaint") to determine the nondischargeability of a credit card debt under § 523(a)(2)(A). Advanta alleged that Debtor obtained by false representation or actual fraud cash advances from the Advanta credit card for the purpose of gambling.

After trial, the bankruptcy court held that the debt was dischargeable.

We AFFIRM.

## I. FACTS

In June 1991, Debtor opened a credit card account with Advanta that had a $9,000 credit line. Debtor, a recreational gambler,[2] often used his Advanta credit

---

**1.** Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**2.** The trial court found that "Kong was a frequent visitor to the gambling casinos in Nevada. He testified that he customarily visited the casinos approximately twice each

card to obtain cash advances for casino gambling. Until July 1997, Debtor always repaid the cash advances, and his gambling losses never exceeded $5,000. On July 11, 1997, the Advanta account had a zero balance, and Debtor had no consumer debt.

On July 12 and 13, 1997, while visiting various Reno, Nevada casinos, Debtor obtained cash advances from four credit cards including the Advanta card.[3] Debtor took two cash advances from his Advanta account totaling $11,095.96. These advances exceeded his credit limit by approximately $1,200.

After Debtor incurred this debt, Debtor did not contact Advanta or make any payments on his credit cards because the debts were too much for him to pay.[4] He realized that to service over $29,000 in credit card debt, he would need excess income of about $3,700 per month.

On July 15, 1997, Debtor contacted a bankruptcy attorney. On the advice of his attorney, Debtor filed a chapter 7 bankruptcy petition in October 1997.

In February 1998, Advanta filed the Complaint. The Complaint sought a determination that Debtor's credit card debt was nondischargeable under § 523(a)(2)(A) because the extension of credit was obtained through false representation or actual fraud.

After trial, the bankruptcy court held that the debt was not excepted from discharge under § 523(a)(2)(A) because Advanta failed to demonstrate that Debtor falsely represented that he intended to repay Advanta at the time that the advances were made. The bankruptcy court

entered judgment on August 7, 1998, and Advanta filed a timely notice of appeal.

## II. ISSUE

Whether the bankruptcy court erred in determining that the credit card debt was not excepted from discharge under § 523(a)(2)(A).

## III. STANDARD OF REVIEW

 We review the bankruptcy court's conclusions of law de novo, and its findings of fact for clear error. *See Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir.1996) (citing *Citibank v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir.1996)). Whether a requisite element of a § 523(a)(2)(A) claim is present involves a factual determination that is reviewed for clear error. *See Anastas v. American Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir.1996) (citing *Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 757 (9th Cir.1981)). Similarly, whether a debtor recklessly represented his intention to repay a credit card debt is a question of fact reviewed for clear error. *See Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir. 1985).

## IV. DISCUSSION

*The Bankruptcy Court Did Not Err in Determining That the Credit Card Debt Was Not Excepted from Discharge Under § 523(a)(2)(A).*

The bankruptcy court found that Advanta failed to meet its burden of proving that Debtor falsely represented that he intended to repay the credit card debt at the time that the cash advances were made.

---

month, and had been doing so for some six to eight years." Decision at 2 (Jul. 21, 1998).

**3.** Debtor's Schedule F indicates four unsecured claims: (1) Advanta in the amount of $11,095.00; (2) Bank of America Visa in the amount of $8,498.30; (3) GTE Mastercard in the amount of $3,219.83; and (4) People's Bank Visa in the amount of $6,519.50. These claims totaled $29,243.59.

**4.** Debtor was employed as a store clerk stocking frozen food for over thirteen years. In that position, he earned between $27,000 and $32,000 a year. In 1997, Debtor earned $27,000. With monthly income of $2,787 and expenses of $2,704, Debtor's monthly excess income was $83.

Advanta argues that the bankruptcy court erred in determining that Debtor did not fraudulently misrepresent his intent to repay the debt because the debt exceeded Debtor's normal gambling losses and Debtor, knowing that the amount of debt incurred was beyond his ability to repay, recklessly represented his intent to repay the debt.

■■■ To establish nondischargeability under § 523(a)(2)(A), the plaintiff has the burden of establishing the following five elements:

> (1) the debtor made ... representations; (2) that at the time he knew they were false; (3) that he made with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representation; and (5) that the creditor sustained the alleged loss and damages as the proximate result of the misrepresentations having been made.

*American Express v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1997), *cert. denied,* 520 U.S. 1230, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (1997). When applying these elements to credit card debt cases, there are three essential inquiries: "(1) did the card holder fraudulently fail to disclose his intent not to repay the credit card debt; (2) did the card issuer justifiably rely on a representation by the debtor; and (3) was the debt sought to be discharged proximately caused by the first two elements." *Anastas,* 94 F.3d at 1283 (citing *Eashai,* 87 F.3d at 1088). "A finding that a debt is nondischargeable under § 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law." *Anastas,* 94 F.3d at 1286 (citing *Public Fin. Corp. of Redlands v. Taylor (In re Taylor),* 514 F.2d 1370, 1373 (9th Cir.1975)). The requirements of

§ 523(a)(2)(A) mirror the common law elements of fraud. *See Field v. Mans,* 516 U.S. 59, 69, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Advanta must prove these elements by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Here, only the first element (whether Debtor fraudulently failed to disclose his intent not to repay) is at issue.

1. *Debtor Did Not Fraudulently Fail to Disclose His Intent Not to Repay the Credit Card Debt.*

Advanta asserts that the bankruptcy court erred in finding that Debtor did not misrepresent his intention to repay the debt at the time that he obtained cash advances from Advanta.

■■■ Section 523(a)(2)(A) provides that a debt incurred by the debtor through false representation or actual fraud will not be discharged. *See* 11 U.S.C. 523(a)(2)(A).[5] "[E]ach time a 'card holder uses his credit card, he makes a representation that he intends to repay ...[.] When the card holder uses the card without an intent to repay, he has made a fraudulent representation to the card issuer.'" *Hashemi,* 104 F.3d at 1126 (quoting *Anastas,* 94 F.3d at 1285).

■■■ In order to determine whether a debtor intended to repay his credit card debt, "a court may infer the existence of the debtor's intent not to pay if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor." *Eashai,* 87 F.3d at 1087. In *Citibank South Dakota v. Dougherty (In re Dougherty),* 84 B.R. 653, 657 (9th Cir. BAP 1988), we adopted twelve factors to

---

**5.** Section 523(a)(2)(A) provides in pertinent part:

> § 523. Exceptions to discharge.
> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
> ....

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.
> 11 U.S.C. § 523(a)(2)(A).

enable courts to determine whether a debtor intended to repay his credit card debt.[6] The Ninth Circuit has subsequently adopted the *Dougherty* factors as a useful approach for ascertaining whether a debtor intended to repay a credit card debt. *See Dougherty,* 84 B.R. at 657.

Advanta contends that the bankruptcy court erred in failing to apply the *Dougherty* factors in determining Debtor's intent to repay. We disagree.

■ Although the bankruptcy court cited to the *Dougherty* case, it did not specifically apply the *Dougherty* factors. Rather, the court relied on *Anastas,* a credit card gambling case, in which the Ninth Circuit held that "the central inquiry in determining whether there was a fraudulent representation is whether the cardholder lacked an intent to repay at the time he made the charge." *Anastas,* 94 F.3d at 1285. In *Anastas,* the Ninth Circuit similarly cited to *Dougherty,* but did not specifically apply the *Dougherty* factors. *Id.* at 1283. In addition, the Ninth Circuit has previously stated that "[the] [*Dougherty* ] factors are nonexclusive; none is dispositive; nor must a debtor's conduct satisfy a minimum number in order to prove fraudulent intent." *Hashemi,* 104 F.3d at 1126. "In determining whether there was a lack of intent to repay, a finder of fact *may* refer to the [*Dougherty* ] factors that the BAP has found useful." *Anastas,* 94 F.3d at 1283 (emphasis added) (citing *Eashai,* 87 F.3d at 1087–88). The Ninth Circuit has recently reaffirmed that the *Dougherty* factors do not "provide the exclusive means of assaying fraudulent intent." *Household Credit Serv. v. Ettell (In re Ettell),* 188 F.3d 1141 (9th Cir.1999)

(citing *Anastas,* 94 F.3d at 1284–85). Therefore, a precise analysis of the *Dougherty* factors, although useful, is not a requisite to determining whether a debtor has fraudulently represented his intent to repay a credit card debt.

■ Here, the court looked at the totality of the circumstances and concluded that based upon Debtor's testimony, Debtor "lost his self control, and a lot of money," but at the time Debtor obtained the cash advances, he intended to win back his losses and repay Advanta from winnings. *Id.* at 2. Thus, following *Anastas,* the bankruptcy court held that the debt was dischargeable.

Advanta contends that *Anastas* is distinguishable because unlike Debtor, the debtor in *Anastas* attempted to work out alternative arrangements to repay his creditors prior to filing his bankruptcy petition.

In *Anastas,* the debtor obtained cash advances over six months on several credit cards to finance his gambling activities. *See Anastas,* 94 F.3d at 1282. He admittedly exceeded the credit limits on the various cards. Unable to make the monthly minimum payments on his $40,000 debt because his living expenses exceeded his income, the debtor attempted to work out alternative arrangements with his creditors. Only after one of the creditors demonstrated an unwillingness to work out an alternative payment schedule did the debtor file for bankruptcy. The bankruptcy court found that the debtor's credit card debt was obtained through actual fraud, and thus, was nondischargeable for purposes of § 523(a)(2)(A). We affirmed.

---

**6.** The twelve factors are:

 (1) the length of time between the charges and the bankruptcy filing; (2) whether or not an attorney had been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges were made; (6) whether the charges were above the credit limit of the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases made were luxuries or necessities.

*Dougherty,* 84 B.R. at 657.

However, the Ninth Circuit reversed, stating that there was no evidence of the debtor's intent not to repay the credit card debt at the time that he incurred the charges. The court opined that the bankruptcy court placed too much weight on the debtor's financial condition. The court held:

The focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges. Rather, the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt.

*Anastas,* 94 F.3d at 1285. Instead, the Ninth Circuit focused on three facts established at trial that suggested that the debtor did not intend to defraud the creditor at the time that the debt was incurred:

First, [the debtor] incurred the credit card debt over a six month period, during which time he always made his monthly payments. Such behavior is inconsistent with the intent to incur a debt without repaying it.... Second, [the debtor] offered uncontradicted testimony that he contacted [the creditor] in an attempt to work out an alternative arrangement for repaying his credit card debt. Third, [the debtor] testified that he always possessed the intent to repay his credit card debts, but that he had a gambling addiction which led him into unexpected financial circumstances.

*Anastas,* 94 F.3d at 1287. Although the court accepted that realistically it was unlikely that the debtor would win back enough money to pay his losses, the evidence supported his good-faith intention to

do so, and therefore, the debt was dischargeable. *Id.* at 1286.[7]

Here, the bankruptcy court similarly found that Debtor, like the debtor in *Anastas,* had "a severe gambling problem, and was financing his gambling with the plaintiff's credit card in amounts that exceeded his financial ability to repay." Decision at 5. Further, like the debtor in *Anastas,* Debtor lacked any realistic hope of repaying his credit card debt after he incurred the gambling losses. *See Anastas,* 94 F.3d at 1286. In addition, the court noted that Debtor incurred no additional debt after he returned from his gambling trip and that "[h]is longstanding pattern, established for a period of years going back to 1991, had been to repay all his Comchek advances, win or lose." *Id.* The court found that the evidence failed to demonstrate that Debtor intended to depart from his pattern of repaying the cash advances before incurring his losses. *Id.* Consequently, because Advanta did not satisfy its burden of demonstrating that Debtor falsely represented that he intended to repay the debt at the time that the cash advances were made, the court, following *Anastas,* determined that the debt was not excluded from discharge under § 523(a)(2)(A).

Advanta contends that unlike the debtor in *Anastas,* Debtor neither made a good-faith effort to make payments nor attempted to repay the advances owed to Advanta. Advanta contends that the absence of these factors is dispositive. We disagree.

 Although only two of the three factual findings discussed in *Anastas* are present in this case (Debtor's use of the credit card over a lengthy time period during which time he always made his monthly payments,[8] and Debtor's testimo-

7. Subsequent to *Anastas,* we recognized that "[o]nce *Anastas* was issued, the burden for creditors to demonstrate intent to defraud appeared to increase." *AT & T Universal Card Serv. Corp. v. Duplante (In re Duplante),* 215 B.R. 444, 452 (9th Cir. BAP 1997) (noting that before *Anastas* was decided, a creditor would have been justified in relying heavily on a debtor's inability to repay in determining

whether circumstances existed in a particular case that would warrant the inference of fraudulent intent).

8. In *Anastas,* the debtor incurred the debt over a sixth-month period whereas Debtor incurred the debt over a two-day period. However, the Ninth Circuit focused on the

ny that he intended to repay his credit card debt, but that his gambling addiction led him into unexpected financial circumstances), the existence of fraud is examined on a case-by-case basis. *See Ettell,* 188 F.3d 1141 (recognizing that the Ninth Circuit applies a totality of the circumstances test in determining the existence of actual fraud); *In re Carolan,* 204 B.R. 980, 985–86 (9th Cir. BAP 1996). The bankruptcy court examined the entire record, listened to the testimony, and determined that Debtor did not falsely represent that he intended to repay his credit card debt at the time that the cash advances were made. The bankruptcy court noted that although courts may consider a debtor's conduct after obtaining cash advances as circumstantial evidence in determining his intent to repay, the mere fact that the debtor attempts to make arrangements to pay the credit card debt is not wholly determinative as to the issue of intent.[9]

▆▆▆▆ We agree. In determining whether a debtor fraudulently misrepresented his intent to repay the credit card debt, "the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt." *Anastas,* 94 F.3d at 1285. The Ninth Circuit has recently held that "[j]ust as a debtor's testimony about his subjective intent is not by itself legally

dispositive, neither are the objective inferences drawn from consideration of the *Dougherty* factors. Because fraud lurks in the shadows, it must usually be brought to light by consideration of circumstantial evidence." *Ettell,* 188 F.3d 1141. Thus, in the Ninth Circuit, "the debtor's subjective intent must be evaluated in light of objective factors." *Id.* n. 3. "Because no single objective factor is dispositive, assessment of intent is thus left to the fact-finder." *Id.* Again, the *Dougherty* factors are not the exclusive means of ascertaining fraudulent intent and do not "handcuff the trier of fact, who is in the best position to balance the objective evidence against the witness's testimony and credibility." *Id.*

In addition, we note that the Restatement (Second) of Torts [10] suggests that it is inappropriate to apply a "reasonable person" test to determine fraudulent intent. Comment d to § 526 states:

> The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have recognized as false is not enough to impose liability upon the maker for a fraudulent misrepresentation under the rule stated in this Section, but is evidence from which his lack of honest belief may be inferred. So, too, it is a matter to be taken into account in determining the credibility of the defendant if he testifies that he believed his representation to be true.

---

> debtor's history of payment on the credit card.
>
> Here, Debtor had a long history of repayment on the Advanta card. Thus, his ultimate failure to repay the debt after incurring his gambling losses, given his payment history, is consistent with the bankruptcy court's finding that Debtor intended to repay the debt at the time that the debt was incurred. However, when he failed to generate winnings to repay his credit card debts, he realized that he did not have the ability to repay his Advanta debt.

**9.** As the bankruptcy court noted:

> the evidence showed that Kong formed the intent not to repay Advanta, *after, not before,* he borrowed from Advanta. Because the relevant focus is the debtor's state of

> mind at the time of, and not after, the borrowing at issue, the fact that Kong decided not to repay any amounts to Advanta very soon after the borrowing—indeed only one day later—is not significant.
>
> Decision at 7 (emphasis added).

**10.** In *Field v. Mans,* the Supreme Court turned to the Restatement (Second) of Torts to ascertain the general understanding of fraud as it was understood in 1978 when "actual fraud" was added to § 523(a)(2)(A), and concluded that such an understanding favored a justifiable reliance standard, which considers the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case. 516 U.S. at 70, 116 S.Ct. 437; *accord Ettell,* 188 F.3d 1141.

RESTATEMENT (SECOND) OF TORTS § 526, cmt. d (1976); *see also Eashai*, 87 F.3d at 1090 (recognizing that a debtor's unreasonably optimistic view that he could repay the debt when it was incurred does not constitute fraud if the debtor intended to repay the debt when it was incurred); *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 787–88 (10th Cir. BAP 1998) (concluding that "a misrepresentation is fraudulent only if the maker 'knows or believes that the matter is not what he represents it to be'") (quoting RESTATEMENT (SECOND) OF TORTS § 526(a)); *Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 332–33 (Bankr. N.D.Ill.1995) (noting that under the common law, a subjective test of intent to defraud is required and is applicable under § 523(a)(2)(A)).

▮▮▮▮ Here, Advanta's evidence was limited to Debtor's inability to pay, the lack of any payments, and Debtor's failure to contact Advanta to arrange a payment plan. While inability to pay alone is insufficient to establish fraudulent intent, *see Anastas*, 94 F.3d at 1285–86,[11] the hopeless state of a debtor's financial condition is a factor that may be considered in determining a debtor's fraudulent intent. *Id.; see also Rembert v. AT & T Universal Card Serv., Inc. (In re Rembert)*, 141 F.3d 277, 282 (6th Cir.1998) (recognizing that a debtor's admission that her belief that she would win enough to repay the creditor was objectively unreasonable was only relevant to the extent that it indicated her intention not to repay her creditor), *cert. denied*, — U.S. —, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998). The Ninth Circuit advises that

> "[c]are must be taken to stop short of a rule that would make every desperate, financially strapped debtor a guarantor of his ability to repay, on pain of nondischargeability. Such a rule would unduly expand the "actual fraud" discharge exception by attenuating the intent re-

quirement. A substantial number of bankruptcy debtors incur debts with hopes of repaying them that could be considered unrealistic in hindsight. This by itself does not constitute fraudulent conduct warranting nondischarge." [*Karelin v. Bank of American Nat'l Trust & Sav. Ass'n (In re Karelin)*, 109 B.R. 943, 947–48 (9th Cir. BAP 1990) ]. In hard financial times, people may engage in the practice of using cash advances to solve their short-term cash flow problems or to deal with sporadic and seasonal income. *See Citibank (N.Y. State) v. Davis (In re Davis)*, 176 B.R. 118 (Bankr.W.D.N.Y.1994). Moreover, we recognize the fragility of human nature. "[H]uman experience tells us debtors can be unreasonably optimistic despite their financial circumstances." *In re Cox*, 182 B.R. 626, 635 (Bankr.D.Mass.1995)....

*Eashai*, 87 F.3d at 1090.

Debtor responded to Advanta's fraudulent intent argument by testifying that he regularly took cash advances and repaid them from winnings. As the court found, "[Debtor's] longstanding pattern, established for a period of years going back to 1991, had been to repay all his Comchek advances, win or lose." Decision at 5. It was not until the July 1997 gambling trip that Debtor incurred losses that rendered him unable to repay the advances. Debtor testified that *after* this loss, he knew that he would be unable to repay his credit card debts from his monthly income. He also testified that he did not decide to file a bankruptcy petition until approximately three weeks after the gambling trip. As the bankruptcy court found, "the evidence showed that [Debtor] was looking to win back enough money to erase his losses, and repay what he had borrowed." *Id.* at 8.

Thus, although the record indicates that Debtor's use of the Advanta card in this instance was inconsistent with his previous

---

**11.** We note that § 523(a)(2) expressly prohibits using a non-written representation of a debtor's financial condition as a basis for fraud. *See Anastas,* 94 F.3d at 1285.

use, we cannot conclude, given Debtor's testimony and prior payment history, that the bankruptcy court's finding that Debtor did not fraudulently represent his intention to repay the credit card debt was clearly erroneous. It is more likely that given Debtor's history of paying his creditors from winnings, Debtor actually believed that he would be able to repay Advanta from his winnings.

In addition, this case is distinguishable from a pre-*Anastas* decision cited by Advanta in which we affirmed the bankruptcy court's holding that a debt incurred by the credit cardholder who obtained cash advances for the purpose of gambling was nondischargeable. *See Karelin,* 109 B.R. 943. In *Karelin,* the debtor had been a heavy casino gambler for fifteen or twenty years, making between one and three gambling trips to the Reno/Lake Tahoe area each month. The debtor had suffered gambling losses in the eighteen months preceding bankruptcy of approximately $400,000, incurring approximately $260,000 in debts to casinos. *Id.* at 945. In a two-week period, and less than two months prior to filing her bankruptcy petition, the debtor obtained two cash advances on her credit card for $110,000 to gamble. The bankruptcy court held the debt to be non-dischargeable under § 523(a)(2)(A), finding that "the debtor's testimony was not credible, and that she was 'hopelessly insolvent' when she accepted the cash advances, having a negative net worth exceeding $400,-000, virtually no equity in her residence, less than $15,000 in unencumbered personal property, and less than $20,000 in annual income." *Id.* at 946. Thus, the court, considering these circumstances, found that the debtor took the cash advances without intending to repay the debt.

We affirmed. Although we noted that the record was replete with evidence of the debtor's hopeless financial condition at the time of the cash advances, we held that the hopelessness of a debtor's financial condition "by itself does not constitute fraudulent conduct warranting non-discharge." *Id.* at 948. However, we concluded that the evidence before the bankruptcy court including (1) the debtor's knowledge of the consistently unsuccessful results of her more than fifteen years' gambling experience, (2) the loss of her job and the failure of her new business, (3) her large gambling losses immediately preceding the cash advances, (4) her grant of liens on her assets within several months preceding the cash advances, and (5) her business experience and general demeanor on the witness stand, supported the court's finding that the debtor fraudulently represented that she intended to repay the debt. *Id.*

Unlike the situation in *Karelin,* Debtor had not been consistently unsuccessful throughout his gambling experience, Debtor remained employed at the same job over a long period of time, and Debtor's previous gambling losses were not that large. Indeed, Debtor testified that he had always repaid his gambling debt and carried a zero bank balance prior to the gambling trip in question. Also, there was no evidence that Debtor encumbered his assets as a result of gambling or that he had a sophisticated understanding of business affairs. Thus, *Karelin* is distinguishable.

We note that this case is also distinguishable from *Eashai,* where the Ninth Circuit held that a credit card debt incurred by a debtor involved in a credit kiting scheme to manipulate the credit card system to acquire money, property, and services with no intention of repaying them, was nondischargeable. *See Eashai,* 87 F.3d at 1090.[12] The court took special

---

12. The credit kiter makes a false representation "by creating the facade that all of his accounts are in good standing ... and ... by failing to disclose to the creditor his intent not to pay his credit card debt." *Id.* at 1088. As the court noted: "This facade gives the debtor the appearance of an honest debtor, who is servicing his credit card debt in a timely manner by making minimum payments each month" while fraudulently intending to "engage in a spending spree" at the expense of his creditors. *Id.*

pains to note that *Eashai* was "not a typical credit card fraud case," *id.* at 1085, and that a "credit kiter is easily distinguishable from a bad luck debtor" because the credit kiter intentionally manipulates the credit card system without intending to repay his creditors. *Id.* at 1099. Indeed, the Ninth Circuit in *Anastas* distinguished *Eashai* on this basis and noted that a debtor who incurs a gambling debt with the intention of repaying the debt from winnings does not have the "type of malicious and bad faith intent not to repay that is necessary for a finding of actual fraud under section 523(a)(2)(A)." *Anastas,* 94 F.3d at 1287.

Because this case is virtually indistinguishable from *Anastas* and the record supports the bankruptcy court's finding that Debtor did not fraudulently misrepresent his intention to repay the debt, we cannot conclude that the bankruptcy court's finding was clearly erroneous.

2. *The Bankruptcy Court Applied the Correct Standard for Reckless Intent for Purposes of § 523(a)(2)(A).*

■ Finally, Advanta contends that the bankruptcy court incorrectly analyzed the recklessness standard which serves as a substitute for fraudulent intent for purposes of § 523(a)(2)(A). Specifically, Advanta argues that the bankruptcy court erroneously concluded that Debtor's use of the Advanta card with the *knowledge* that he could only pay Advanta from winnings did not establish recklessness with respect to Debtor's intent to repay Advanta.

■ The Ninth Circuit, as well as other appellate courts, have recognized that "reckless disregard for the truth of a representation satisfies the element that the debtor has made an intentionally false representation in obtaining credit." *Anas-*

tas, 94 F.3d at 1286 (citing *Houtman v. Mann (In re Houtman),* 568 F.2d 651, 656 (9th Cir.1978)); *Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch),* 237 B.R. 160, 167–68 (9th Cir. BAP 1999) (recognizing that "intent to deceive can be inferred from the totality of circumstances, including reckless disregard for the truth") (citations omitted).[13] The "use of the credit card is attended by an obligation on the part of the cardholder to make bona fide use of it. Such good faith means that he cannot use the credit card with *reckless indifference to his actual circumstances.*" *Eashai,* 167 B.R. at 185 (emphasis added). The Ninth Circuit uses the phrase "reckless indifference to his actual circumstances" interchangeably with "reckless disregard for the truth of a representation." *Anastas,* 94 F.3d at 1286; *see also Ettell,* 188 F.3d 1141 n. 4 ("reckless conduct could be sufficient to establish fraudulent intent") (citing *Anastas,* 94 F.3d at 1286); *Arm v. A. Lindsay Morrison, M.D., Inc. (In re Arm),* 175 B.R. 349, 354 (9th Cir. BAP 1994), *aff'd,* 87 F.3d 1046, 1049 (9th Cir.1996); *Bear Stearns,* 30 B.R. at 502. "[R]eckless conduct must involve more than simple, or even inexcusable negligence; it requires such extreme departure from the standards of ordinary care that it presents a danger of misleading [those whom rely on the truth of the representation]." 69 A AM.JUR.2d *Securities Regulation—Federal* § 1284 (1993). Fraudulent misrepresentation is established where the maker of a statement chooses to assert it as a fact even though he is conscious that he has neither knowledge nor belief in its existence "and recognizes that there is a chance, more or less great, that the fact may not be as it is represented." RESTATEMENT (SECOND) OF

---

13. *See also Palmacci v. Umpierrez,* 121 F.3d 781, 790 (1st Cir.1997); *Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163, 1167 (6th Cir.1985) ("The standard, however, is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied."); *Birmingham Trust,* 755 F.2d at 1476; *Chevy Chase Bank*

*FSB v. Kukuk (In re Kukuk),* 225 B.R. 778, 788 (10th Cir. BAP 1998); *Eashai v. Citibank (In re Eashai),* 167 B.R. 181, 185 (9th Cir. BAP 1994), *aff'd,* 87 F.3d 1082, 1089 (9th Cir.1996); *Bear Stearns & Co. v. Kurdoghlian (In re Kurdoghlian),* 30 B.R. 500, 502 (9th Cir. BAP 1983).

TORTS § 526, cmt. e. "This is often expressed by saying that fraud is proved if it is shown that a false representation has been made without belief in its truth or recklessly, careless of whether it is true or false." *Id. See also Houtman*, 568 F.2d at 656 (" '[R]eckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct' [is] sufficient to establish the knowledge element ... which completely bar[s] a discharge of all debts if the bankrupt made a materially false statement in order to obtain property on credit.") (quoting *Morimura, Arai & Co. v. Taback*, 279 U.S. 24, 33, 49 S.Ct. 212, 73 L.Ed. 586 (1929)).

Here, Advanta argues that Debtor's use of a credit card for recreational gambling where Debtor could only intend to repay the debt from winnings constituted a reckless indifference to the truth of his intent to repay the debt. Specifically, Advanta contends that the bankruptcy court erred in determining that Debtor's reckless conduct did not establish fraudulent intent because Debtor took the cash advances with the knowledge that he had no ability to repay ·the debt other than from winnings.[14]

█ However, *Anastas* advises us that "in applying the concept of reckless disregard for the truth of a representation in the case of credit card debt, we must be careful to keep in mind that the representation being made by the card holder is solely as to intent to repay, not as to the debtor's ability to repay." *Anastas*, 94 F.3d at 1286. Reckless disregard should

**14.** For example, Advanta asserts that:
[Debtor] *knew* that he had only $83 in disposable income, *knew* that he was getting in over his head, *knew* that he could not repay the debt he was incurring unless he won at gambling, *knew* that he was using "bad judgment," and yet he kept on going because he had nothing more to lose.
Appellant's Opening Br. 19.

**15.** *Cf. Palmacci*, 121 F.3d at 789 (stating that "if [the debtor] knew or clearly should have

be very narrowly construed. *See Kukuk*, 225 B.R. at 787.

> [C]ourts faced with the issue of dischargeability of credit card debt must take care to avoid forming the inquiry under section 523(a)(2)(A) as whether the debtor recklessly represented his financial condition. The correct inquiry is whether the debtor either intentionally or with recklessness as to its truth or falsity, made the representation that he intended to repay the debt.

*Anastas*, 94 F.3d at 1286.

█ Here, Advanta's focus on Debtor's use of the credit card with the knowledge of his limited income does not alone establish that Debtor recklessly represented his intent to repay the debt. *See Anastas*, 94 F.3d at 1286; *Karelin*, 109 B.R. at 947–48.[15] We emphasize that recklessness with respect to intent to repay, like fraudulent intent, involves a factual determination that is the province of the trial court. *See Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304–05 (11th Cir.1994) (citing *Birmingham Trust*, 755 F.2d at 1477). Although Debtor may have known that he would be unable to pay Advanta except from winnings, we are not " 'left with a definite and firm conviction that a mistake has been committed' " by the bankruptcy court in determining that Debtor did not recklessly form his intent to repay. *Ettell*, 188 F.3d 1141 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). The bankruptcy court reviewed all of the evidence, including Debtor's history of repayment, in making its determinations.

known that there was no realistic way for him to use his own money to invest, then that is probative of his lack of intent to keep his promise at the time he made the promise. But the focus must be on whether the representation was made in bad faith, i.e., whether he induced [the] investment with the intention of reneging on his promise to invest personal funds (or while recklessly disregarding whether or not he would keep his promise.")) (citing *Anastas*, 94 F.3d at 1286).

Indeed, even if Debtor's use of credit cards to finance his gambling excursion became reckless at some point in time because it was highly unlikely that he could pay the debt from winnings, Advanta failed to present any evidence that the cash advances from its credit card were made at a time when Debtor with indifference recklessly represented his intent to repay Advanta for the advances. As the court noted and as Advanta conceded during oral argument on appeal, there was no testimony regarding the timing of Debtor's use of the Advanta credit card as opposed to the other credit cards during Debtor's gambling trip. For example, if the advances taken on the Advanta card occurred when Debtor knew or acting with reckless indifference should have known that he would not be able to repay the debt from his winnings, the bankruptcy court could have found that Debtor acted recklessly in forming his belief that he intended to repay the debt. In other words, he did not have an honest belief as to his intent to pay. Indeed, as Advanta conceded on appeal, Debtor apparently had an unusually long winning streak.

Advanta would have us hold that as a matter of law, a debtor who takes an advance on a credit card to gamble knowing that his only source of payment is from winnings has recklessly formed his intent to pay the debt. We do not believe that this is the law in the Ninth Circuit for the reasons previously discussed.

Accordingly, the bankruptcy court applied the correct legal standard for reckless intent and did not commit clear error in finding that Debtor's use of the Advanta

card did not constitute a reckless misrepresentation as to Debtor's intent to repay the debt.[16]

## V. CONCLUSION

In sum, the bankruptcy court did not err in determining that Debtor's credit card debt owed to Advanta was not excepted from discharge under § 523(a)(2)(A). Advanta failed to meet its burden of demonstrating that Debtor obtained the cash advances through false representation or actual fraud.

AFFIRMED.

---

16. Debtor devotes much of his opening brief by arguing that gambling loans are judicially unenforceable in California, and therefore, Advanta cannot recover on the cash advances obtained by Debtor because Debtor used the advances to gamble. *See Metropolitan Creditors Serv. v. Sadri*, 15 Cal.App.4th 1821, 19 Cal.Rptr.2d 646, 648 (1993); *see also Kelly v. First Astri Corp.*, 72 Cal.App.4th 462, 84 Cal. Rptr.2d 810, 818 (1999) (holding that "California has a strong, broad, and long-standing public policy against judicial resolution of civ-

il disputes arising out of gambling contracts or transactions"). The bankruptcy court did not address this issue because it found that the debt was dischargeable. Similarly, we need not decide this issue. We note, however, that whether a debt is dischargeable under § 523(a)(2)(A) is governed by federal law, *see Field v. Mans*, 516 U.S. at 60, 116 S.Ct. 437, and that a challenge to the enforceability of the debt is more properly the province of the California courts.