**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   AZ-13-1519-DJuKi |
| ) | |
| GARY E. HIRTH, ) | Bk. No.   10-39593 |
| ) | |
| Debtor. ) | Adv. No.  11-00474 |
| _____ ) | |
| GARY E. HIRTH, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| PEGGY DONOVAN; DAVID ) | |
| DONOVAN, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Submitted Without Oral Argument
on November 20, 2014

Filed - December 11, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Daniel P. Collins, Chief Bankruptcy Judge, Presiding

_____

Appearances:   Allan D. NewDelman and Roberta J. Sunkin of ALLAN
D. NEWDELMAN, P.C. on brief for appellant; Edwin
B. Stanley of SIMBRO & STANLEY, PLC on brief for
appellees.

_____

Before: DUNN, JURY AND KIRSCHER, Bankruptcy Judges.

_____

    [1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

The debtor, Gary Hirth, appeals the bankruptcy court's order granting summary judgment in favor of Peggy and David Donovan on their § 523(a)(2)(A) claim.[2] While this appeal was pending, the debtor passed away. For the reasons set forth below, we AFFIRM.

**FACTS**[3]

The debtor owned and controlled Aruba Holdings, Ltd. ("Aruba Holdings"), a corporation that handled real estate investments. Neither the debtor nor Aruba Holdings held real estate licenses.

Through Aruba Holdings, the debtor acquired approximately 40 acres of unimproved land in Coconino County, Arizona ("Tract"). The Tract was part of a development known as Moqui Ranchettes. The debtor divided the Tract into four 10-acre parcels, one of which he sold to the Donovans in November 2004 ("Property").[4]

Under Arizona law, sellers of real property are required to disclose to prospective buyers all known material facts about the real property being sold. To this end, sellers must fill out a

---

[2] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101-1003.

[3] We have taken a number of facts from the joint pre-hearing statement submitted by the debtor and the Donovans in the adversary proceeding.

[4] According to the joint pre-hearing statement, the debtor, Aruba Holdings and the Donovans entered into the sale agreement on November 10, 2004. Aruba Holdings conveyed the parcel to the Donovans by warranty deed, which they recorded on November 8, 2004.

form titled, "Vacant Land/Lot Seller's Property Disclosure Statement" ("SPDS"). The SPDS lists more than 160 questions and directions that purport to help sellers make these disclosures.

The debtor filled out the SPDS and provided a copy of it to the Donovans. Out of the 160 plus questions and directions listed in the SPDS, the following three are relevant to this appeal:

> 1) Is the Property located in an unincorporated area of the county?
> 2) If yes, and five or fewer parcels of land other than subdivided land are being transferred, the Seller must furnish the Buyer with a written Affidavit of Disclosure ["Affidavit"] in the form required by law.
> 3) To your knowledge, is the Property within a subdivision approved by the Arizona Department of Real Estate?

Because he answered "yes" to the first question, the debtor executed the Affidavit. In the Affidavit, the debtor represented under penalty of perjury that the sale of the Property met "the requirements of A.R.S. § 11-809 regarding land divisions."[5] He

---

[5] Since the time the debtor executed the Affidavit on September 13, 2004, A.R.S. § 11-809 has been amended; the current version of A.R.S. § 11-809 addresses public works project planning, not the requirements for approval of land divisions. We thus refer to the 2004 version of A.R.S. § 11-809.

A.R.S. § 11-809 provided, in relevant part:

A. The board of supervisors of each county may adopt ordinances and regulations pursuant to this section for staff review and approval of land divisions of five or fewer lots, parcels or fractional interests, any of which is ten acres or smaller in size. The county may not deny approval of any land division that meets the requirements of this section. If review of the request is not completed within thirty days after receiving the

(continued...)

3

answered "no" to the third question.

After they purchased the Property, the Donovans discovered that the legal requirements for land division had not been met and an approved subdivision plat from the county had not been obtained for the Property. As a result, they were unable to obtain building permits for the Property.

Meanwhile, the Arizona Department of Real Estate ("ADRE") commenced an investigation into certain alleged violations of state land acquisition, division and transfer/sale laws by the debtor and Aruba Holdings, among others. Its investigation culminated in a consent order ("Consent Order"), dated February 5, 2008, binding the debtor and Aruba Holdings, along with other parties.

The Consent Order set forth factual findings and legal conclusions concerning the debtor and Aruba Holdings' violations of state land division laws. It outlined the division of the

---

[5](...continued)
request, the land division is considered to be approved. At its option, the board of supervisors may submit a ballot question to the voters of the county to allow the voters to determine the application of subsections B and C to qualifying land divisions in that county.
. . .
F. It shall be unlawful for a person or group of persons acting in concert to attempt to avoid the provisions of this section or the subdivision laws of this state by acting in concert to divide a parcel of land into six or more lots or sell or lease six or more lots by using a series of owners or conveyances. This prohibition may be enforced by any county where the division occurred or by the state real estate department pursuant to title 32, chapter 20.

4

Tract through various transfers, including the sale of the Property to the Donovans.

Citing A.R.S. § 32-2181(D), the Consent Order then stated that the debtor and Aruba Holdings tried to circumvent state subdivision laws by acting in concert with others to divide the land within Moqui Ranchettes by using a series of owners and/or conveyances.[6] Specifically, the Consent Order stated that the debtor and Aruba Holdings "planned, arranged, adjusted, agreed on

---

[6] The 2004 version of A.R.S. § 32-2181 provided, in relevant part:

A. Before offering subdivided lands for sale or lease, the subdivider shall notify the commissioner in writing of the subdivider's intention. The notice shall contain . . . .

. . .

D. It is unlawful for a person or group of persons acting in concert to attempt to avoid the provisions of this article by acting in concert to divide a parcel of land or sell subdivision lots by using a series of owners or conveyances or by any other method which ultimately results in the division of the lands into a subdivision or the sale of subdivided land. The plan or offering is subject to the provisions of this article. Unlawful acting in concert pursuant to this subsection with respect to the sale or lease of subdivision lots requires proof that the real estate licensee or other licensed professional knew or with the exercise of reasonable diligence should have known that property which the licensee listed or for which the licensee acted in any capacity as agent was subdivided land subject to the provisions of this article.

E. A creation of six or more lots, parcels or fractional interests in improved or unimproved land, lots or parcels of any size is subject to this article except when . . . .

5

and settled" between themselves and others "acting together pursuant to some design or scheme" to subdivide the land in such a way as to circumvent the state land division laws.

The debtor signed the Consent Order on his and Aruba Holdings' behalf. The Consent Order provided that, by signing it, he admitted to the factual findings and legal conclusions set forth therein and agreed to be bound by it. He also agreed to waive his rights to an administrative hearing and to appeal the factual findings and legal conclusions set forth in the Consent Order.

The debtor further consented to entry of the Consent Order. He also acknowledged that his and Aruba Holdings' acceptance of the Consent Order "[was] to settle the specific allegations by the [ADRE] in this matter and [did] not preclude any other agency or officer of this State, or subdivision thereof, from instituting other civil or criminal proceedings as may be appropriate in the future." Id. at 101-02. The debtor did not challenge the Consent Order.

On March 31, 2008, the debtor and Aruba Holdings entered into a settlement agreement ("Settlement Agreement") with the Donovans. The Settlement Agreement set forth several recitals, including:

    1) [The Donovans] purchased their lot in reliance upon
    representations made by the [debtor and Aruba Holdings]
    that Moqui Ranchettes had been legally subdivided, that
    all the legal requirements for land division had been
    met, and that building permits could be obtained for
    immediate construction of homes;
    2) After purchasing the [Property, the Donovans]
    learned that the legal requirements for land division
    had not been met and an approved subdivision plat from
    Coconino County had not been obtained. Consequently,
    [the Donovans] have been denied building permits, have

6

incurred costs, and have been denied the use and enjoyment of their [Property] as anticipated since the date of purchase; and

3) [The debtor and Aruba Holdings] den[ied] knowingly engaging in any wrongdoing with respect to the sale of the [Property to the Donovans].

The Settlement Agreement further provided that the debtor and the Donovans agreed that the recitals were "true, correct and not subject to dispute."

Under the Settlement Agreement, the debtor and Aruba Holdings were to obtain subdivision status for the Property within 24 months. If the debtor and Aruba Holdings were unable to obtain subdivision status within 18 months, they were required to pay the Donovans $5,000, plus an additional $5,000 each month thereafter, up to 180 days maximum, until the debtor and Aruba Holdings obtained subdivision status for the Property. If the debtor and Aruba Holdings were unable to obtain subdivision status for the Property within 24 months, the Donovans could choose to sell the Property back to the debtor and Aruba Holdings.

Alternatively, the Donovans could choose to continue receiving $5,000 per month, up to an additional 6 months past the 24-month period, until the debtor and Aruba Holdings obtained subdivision status. If the debtor and Aruba Holdings failed to obtain subdivision status for the Property within the 24-month period through their acts or omissions, the Donovans retained all rights and causes of action against the debtor and Aruba Holdings for any and all damages arising out of their purchase of the Property or breach of the Settlement Agreement.

When the debtor and Aruba Holdings failed to perform under

7

the Settlement Agreement, the Donovans initiated a state court action against them on May 3, 2010. The Donovans alleged in their state court complaint that the debtor and Aruba Holdings breached the Settlement Agreement by failing to make all payments when due, to timely obtain subdivision status for the Property and to repurchase the Property from the Donovans.

On December 2, 2010, the state court issued a judgment ("State Court Judgment") against the debtor on the Donovans' motion for summary judgment. Under the State Court Judgment, the Donovans were awarded a total of $174,866.80 (which included attorney's fees and costs) plus interest. The Donovans also were to reconvey the Property to the debtor once they received payment from him on the State Court Judgment.

On December 12, 2010, the debtor filed his chapter 7 bankruptcy petition. On March 14, 2011, the Donovans filed a complaint seeking to except the State Court Judgment from discharge under § 523(a)(2)(A).

The Donovans referenced the State Court Judgment in their complaint. They then went on to allege that the debtor knowingly and falsely represented that the Property was subdivided properly with the intent to induce them to purchase it. The Donovans asserted that they reasonably relied on the debtor's misrepresentation when they purchased the Property. As a result of the debtor's misrepresentation, they incurred damages.

After the debtor filed his answer, the Donovans moved for summary judgment ("Summary Judgment Motion"). They contended that no genuine issues of material fact existed because they had established all of the necessary elements of § 523(a)(2)(A).

8

The Donovans relied on the Consent Order to establish the debtor's knowledge of the falsity of his representation about the subdivision status of the Property and his intent to deceive them.[7] They asserted that the debtor admitted in the Consent Order that he acted with reckless disregard for the truth of the representation about the subdivision status of the Property. Specifically, he admitted in the Consent Order that he acted in concert with others to subdivide land within Moqui Ranchettes by using a series of owners and/or conveyances in an attempt to circumvent state land division laws. The Donovans further contended that the debtor could not collaterally attack the Consent Order as to these two elements because he consented to its factual findings and legal conclusions and waived all rights to challenge them on appeal.

The debtor opposed, arguing that genuine issues of material fact existed as to these two elements because his admissions in the Consent Order did not rise to the level of knowledge and intent required under § 523(a)(2)(A). He claimed that his admissions in the Consent Order merely involved a general negligence standard; at most, the admissions showed that the debtor "knew or with the exercise of reasonable diligence should have known" that the Property was subject to A.R.S. § 32-2181(D). The debtor's admissions in the Consent Order did "not support a finding that [his] actions constitute[d] reckless disregard, which requires an extreme departure from the standards of

---

[7] We only focus on two of the five elements of § 523(a)(2)(A) as the debtor does not contest on appeal the bankruptcy court's determinations on the other three elements.

ordinary care and more than simple or even inexcusable neglect." In support of his opposition to the Summary Judgment Motion, the debtor submitted his own statement of facts, which included copies of the Affidavit and the SPDS and a portion of a transcript of the February 28, 2012 deposition of Mr. Donovan. (At his deposition, Mr. Donovan testified that he thought that the Affidavit indicated that the Property was buildable.) Notably, the debtor did not provide any declarations in support of his opposition to the Summary Judgment Motion.

At the August 8, 2013 hearing on the Summary Judgment Motion, the bankruptcy court told counsel for the Donovans and the debtor that it wished to focus on their arguments concerning intent.

Counsel for the Donovans contended that the Consent Order had preclusive effect as to the debtor's intent under § 523(a)(2)(A). He focused on the Consent Order, asserting

> that again is an administrative proceeding in an agreed order that the [debtor] agreed to all those findings of fact and agreed that they would not be disputed in a court or any tribunal. And that include[d] this Court, Judge.

Tr. of Aug. 8, 2013 hr'g, 5:11-15. Counsel for the Donovans proceeded to highlight the factual findings in the Consent Order that established that the debtor acted "in a conspiracy with the other land owners to illegally subdivide the property." Tr. of Aug. 8, 2013 hr'g, 6:17-18. He emphasized that the debtor had admitted to these factual findings.

Counsel for the Donovans also pointed out that A.R.S. § 32-2181(D) contained the elements of knowledge and intent necessary for a § 523(a)(2)(A) claim in that it provides that a person

10

violates the statute if he knew or had reason to know that he was subdividing lands illegally.[8] Counsel for the Donovans again stressed that the debtor had agreed to this statement in the Consent Order. Counsel for the Donovans concluded that,

> by admitting to his violation of [A.R.S. § 32-2181(D)] since [A.R.S. § 32-2181(D)] has a specific knowledge standard in it and that knowledge standard meets the standards of [§] 523(a)(2)[(A)], then that again means that there is no – it – no issue of fact on his fraudulent intent because it's now an adjudicated fact under the ADRE consent order.

Tr. of Aug. 8, 2013, 8:4-9.

Counsel for the debtor countered that the debtor's statements in the Consent Order did not satisfy the elements of intent and knowledge under § 523(a)(2)(A). Specifically, counsel for the debtor argued that the standards for intent and knowledge in A.R.S. § 32-2181(D) were not the same as those in § 523(a)(2)(A). A.R.S. § 32-2181(D) requires that a person "knew or with the exercise of reasonable diligence should have known of the problems with the subdivision . . . ." Tr. of Aug. 8, 2013, 12:4-5. However, within the Ninth Circuit, fraudulent intent

> must involve more than simple or even inexcusable negligence. It requires such an extreme departure from the standards of ordinary care that it presents a danger of misleading those who rely on the truth of the representation.

Tr. of Aug. 8, 2013 hr'g, 12:10-14. Counsel for the debtor argued that because the two standards for intent under A.R.S.

---

[8] Counsel for the debtor and the Donovans both seemed to conflate the knowledge and intent elements in their arguments before the bankruptcy court and before us. The bankruptcy court also appeared to have merged these two elements in its analysis. We have tried to distinguish to the extent possible the arguments and analysis concerning each of these two elements.

11

§ 32-2181(D) and § 523(a)(2)(A) were not the same, a genuine issue of material fact existed. He contended that the Settlement Agreement, the State Court Judgment and the Consent Order did not conclusively establish that the debtor acted with fraudulent intent.

The bankruptcy court asked counsel for the debtor that if it were to conduct a trial, what evidence would he submit that was not already before it? Counsel for the debtor answered that he would present evidence of the debtor's transactions and the way in which the sale occurred through witness testimony.

Counsel for the debtor acknowledged that he did not provide an affidavit of the debtor in his opposition to the Summary Judgment Motion. Counsel for the debtor believed that he did not need to provide an affidavit because he thought that the Donovans failed to show in the Summary Judgment Motion that no genuine issue of material fact existed. He contended that it was

> up to this Court to listen to the testimony, listen to witness testimony, establish credibility and determine whether [the debtor] either intended to defraud the Donovans or acted – you know his conduct was reckless and that it involved more than simple or even inexcusable neglect or negligence. And it had to be an extreme departure from the standards of ordinary care. And that's what testimony we'd put on.

Tr. of Aug. 8, 2013 hr'g, 13:6-12.

Counsel for the debtor further explained that he did not "put forth a lot of evidence of what [the debtor's] intent [was] because [the Donovans] haven't shown his intent." Tr. of Aug. 8, 2013 hr'g, 19:18-19. He claimed that

> [the] documents don't prove [the debtor] committed fraud. Those documents show [the debtor] knew or he should've known, simple as that. And to [counsel for

12

> the debtor] fraud carries a much higher burden. And until, you know, the moving party presents sufficient evidence that there was no genuine issue of material fact, and they are entitled to a judgment as a matter of law, we don't have an obligation to put forth, you know, contradictory evidence of intent . . . .

Tr. of Aug. 8, 2013 hr'g, 19:20-25, 20:1-2. Counsel for the debtor informed the bankruptcy court that if the matter went to trial, he would present witness testimony as to the elements of intent and knowledge under § 523(a)(2)(A).

Counsel for the Donovans returned that, when he opposed the Summary Judgment Motion, the debtor should have "step[ped] up with admissible evidence to the [bankruptcy court] and put it in the record and not speculate upon what the evidence might or might not be at a later date." Tr. of Aug. 8, 2013 hr'g, 14:7-10. But counsel for the Donovans asserted that such evidentiary presentation would have been futile, given that the Consent Order had issue preclusive effect. Counsel for the Donovans further countered that the Consent Order included sufficient language concerning intent; he argued that it contained "intent-type language." Tr. of Aug. 8, 2013 hr'g, 20:25.

He also argued that the Consent Order included sufficient language concerning knowledge in that it confirmed that the debtor had "agree[d], planned, and he schemed." Tr. of Aug. 8, 2013 hr'g, 22:3. The Consent Order cited A.R.S. § 32-2181(D) which "has got the specific level of knowledge and intent that is involved." Tr. of Aug. 8, 2013 hr'g, 22:4-5. Counsel for the Donovans argued that "knowing that it's wrong or having good reason to know it's wrong, that clearly meets the standard of

13

reckless disregard [which is] not a negligence standard as . . . suggested [by the debtor." Tr. of Aug. 8, 2013 hr'g, 22:8-11.

At the conclusion of argument at the hearing, the bankruptcy court took the Summary Judgment Motion under advisement. On September 18, 2013, the bankruptcy court issued an order granting summary judgment ("Summary Judgment Order") in favor of the Donovans. The bankruptcy court set forth its factual findings and legal conclusions in the Summary Judgment Order.

The bankruptcy court essentially incorporated in the Summary Judgment Order the factual findings set forth in the Settlement Agreement and the Consent Order. It also referenced the Affidavit, pointing out that the debtor represented in the Affidavit that the Property was subdivided properly. The bankruptcy court mentioned that the debtor and Aruba Holdings breached the Settlement Agreement by failing to make liquidated damages payments and refusing to repurchase the Property. It also noted that the debtor and Aruba Holdings consented to the factual findings and legal conclusions in the Consent Order. The bankruptcy court highlighted the language in the Consent Order that stated that the debtor and Aruba Holdings, through their conduct, "acted in concert to divide parcels of land within Moqui Ranchettes, as defined by A.R.S. § 32-2101(1) and in violation of A.R.S. § 32-2181(D)."

The bankruptcy court excepted the State Court Judgment from discharge under § 523(a)(2)(A). With respect to the elements of knowledge and intent, it determined that the Consent Order established that 1) the debtor knew or with the exercise of reasonable diligence should have known that the representation

14

about the subdivision of the Property was false, and 2) he made the representation with reckless indifference or disregard for its truth.  The bankruptcy court based its determination on the Consent Order, pointing out that it was binding on the debtor.

The Consent Order stated that the debtor acted in concert to violate A.R.S. § 32-2181(D), which requires that "the real estate licensee or other licensed professional knew or with the exercise of reasonable diligence should have known that the property which the licensee listed or for which the licensee acted in any capacity as agent was subdivided land subject to [the statute]." Citing Cal. State Emps. Credit Union No. 6 v. Nelson (In re Nelson), 561 F.2d 1342 (9th Cir. 1977), and Houtman v. Mann (In re Houtman), 568 F.2d 651 (9th Cir. 1978), the bankruptcy court determined that, within the Ninth Circuit, "making a false statement with reason to know of its falsity suffices to demonstrate fraudulent intent."

The bankruptcy court reasoned that "the 'know or should have known' standard [in A.R.S. § 32-2181(D)] is akin to [the] recklessness [standard in § 523(a)(2)(A)]."  Within the Ninth Circuit, the "reckless disregard" standard requires that the debtor have "reckless indifference to his actual circumstances" when he made the representation.  Here, the bankruptcy court determined, at the time he executed the Affidavit averring that the Property was subdivided properly, the debtor knew or should have known that it was false.  But the debtor recklessly disregarded the truth by going forward in signing the Affidavit. The bankruptcy court concluded that the debtor could not present credible evidence showing that he was negligent when the

15

Affidavit stated that the Property was subdivided properly. Id.

The debtor timely appealed the Summary Judgment Order. However, while this appeal was pending, the debtor passed away.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158, subject to the jurisdictional issue below.

**ISSUES**

(1) In granting summary judgment to the Donovans, did the bankruptcy court err in giving issue preclusive effect to the Consent Order?

(2) In granting summary judgment to the Donovans, did the bankruptcy court err in determining that they had established the debtor's knowledge of the falsity of the representation and his intent to deceive under § 523(a)(2)(A)?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's grant of summary judgment. Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 826 (9th Cir. 2002). The question of whether a claim is excepted from discharge presents mixed issues of law and fact, which we also review de novo. Id. (citing Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001)). Under de novo review, we review the bankruptcy court's decision independently, giving no deference to its determinations. First Avenue West Building, LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006).

///

///

16

**DISCUSSION**

A.   Constitutional mootness

As a preliminary matter we note the potential that this appeal is moot.  We cannot exercise jurisdiction over a moot appeal.  Felster Publ'g v. Burrell (In re Burrell), 415 F.3d 994, 998 (9th Cir. 2005).  If an appeal becomes moot while it is pending before us, we must dismiss it.  U.S. v. Pattullo (In re Pattullo), 271 F.3d 898, 900 (9th Cir. 2001).

A moot case is one where the issues presented are no longer live, and no case or controversy exists.  Burrell, 415 F.3d at 998.  See also City Ctr. W., LP v. Am. Modern Home Ins. Co., 749 F.3d 912, 913 (9th Cir. 2014)("'Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies.'") (quoting Prier v. Steed, 456 F.3d 1209, 1212 (10th Cir. 2006)).  The test for mootness is whether an appellate court still can grant effective relief to the appealing party if it decides the merits in his favor.  Burrell, 415 F.3d at 998.  "Federal courts may hear a dispute only when its resolution 'will have practical consequences to the conduct of the parties.'"  City Ctr. W., LP, 749 F.3d at 913 (quoting Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d 1372, 1376 (10th Cir. 2011)).

On appeal, the debtor sought to vacate the Summary Judgment Order and remand to the bankruptcy court so that it could conduct a trial on the Donovans' § 523(a)(2)(A) claim where he could present evidence as to his knowledge and intent.  Counsel for the debtor admitted that he did not provide much evidence in support of the debtor's opposition to the Summary Judgment Motion because

17

he believed that the Donovans failed to bear their burden of proof to demonstrate that no genuine issues of material fact existed. But, as he explained at the hearing, counsel for the debtor planned to provide witness testimony at trial.

However, as we noted earlier, the debtor has passed away; he cannot provide any testimony at trial, either in person or by affidavit, as to his knowledge and intent. We also wonder: What other evidence can the debtor's estate provide to support his position? Given that he is deceased, the debtor cannot locate and provide any additional documentation.

If the bankruptcy court simply is going to review the same documents already submitted by the Donovans in support of their Summary Judgment Motion, how will the result be any different? What effective relief can we grant to the debtor in these circumstances? However, potential mootness issues aside, considering this appeal on its merits, we affirm for the following reasons.

B.    Consent Order as Evidentiary Admission

On appeal, the debtor asserts that the bankruptcy court erred in giving the Consent Order issue preclusive effect because the Consent Order did not meet certain due process requirements. He maintains that, in order for an administrative order to have issue preclusive effect, the following conditions must have been satisfied: 1) the administrative agency acted in a judicial capacity; 2) the administrative agency resolved the disputed factual issues before it; and 3) the parties involved had an adequate opportunity to litigate. The debtor argues that none of these conditions were met when the debtor entered into the

Consent Order.

Specifically, the debtor argues that: the ADRE did not prove its case, even admitting that it only "believed" it had sufficient grounds to prove its case; no administrative law judge actually oversaw the proceedings; and the underlying allegations charged by the ADRE had not been litigated. The debtor further contends that the Donovans submitted no evidence to show that he had a full and fair opportunity to litigate the findings and conclusions in the Consent Order.

As noted above, the bankruptcy court applied issue preclusion to the Consent Order. However, we apply a different principle: we construe the Consent Order as including statements against interest (a.k.a., admissions against interest).[9]

"Relevant admissions of a party, whether consisting of oral or written assertions . . ., are admissible when offered by an opponent." Hon. Barry Russell, Bankruptcy Evidence Manual, Vol. 2, § 801.12 (2013 ed.). Admissions constitute substantive evidence. Id. However, "as is the case with most evidence, an admission under Rule 801 is generally not conclusive. It is entitled to whatever weight the trier of fact gives it." Id. See also, e.g., In re Harris, 279 B.R. 254, 264 (9th Cir. BAP 2002)(Klein, J., dissenting)(determining that "every fact [the debtor's lawyer] asserted that could be used to support a finding of 'substantial abuse' [under § 707(b)] is a non-hearsay

---

[9] Evidence Rule 801(d)(2) provides, in relevant part, that a statement is not hearsay if it "is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . ."

evidentiary admission under Rule 801(d)(2).")(citation omitted).

Here, the debtor explicitly admitted to the factual findings and legal conclusions in the Consent Order and agreed to be bound by them. He also agreed to waive his rights to an administrative hearing and to appeal the factual findings and legal conclusions set forth in the Consent Order. Moreover, the debtor did not provide evidence to counter the admissions he made in the Consent Order. As the trier of fact, the bankruptcy court could and did give the Consent Order due weight in making its determination. It did not err in doing so.

C.   Knowledge and intent under § 523(a)(2)(A)

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Ilko v. Cal. State Bd. of Equalization (In re Ilko), 651 F.3d 1049, 1052 (9th Cir. 2011)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008)(citation omitted). The moving party bears the burden of showing that no genuine issue of material fact exists. Id. The bankruptcy court must view all evidence in the light most favorable to the nonmoving party. Id.

"In response to a properly submitted summary judgment

20

motion, the burden shifts to the [nonmoving] party to set forth specific facts showing that there is a genuine issue for trial. The nonmoving party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Id. (citations and internal quotation marks omitted).

The bankruptcy court cannot grant summary judgment based on its assessment of the credibility of the evidence presented. Id. (quoting Agosto v. INS, 436 U.S. 748, 756 (1978)). At the summary judgment stage, the bankruptcy court cannot weigh the evidence and determine the truth of the matter. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). It must limit itself to determining whether there is a genuine issue for trial. Barboza, 545 F.3d at 707 (quoting Anderson, 477 U.S. at 249).

Under § 523(a)(2)(A), a bankruptcy court may except from discharge any debt for money, property, services or credit obtained by false pretenses, a false representation or actual fraud. To prevail on a claim under § 523(a)(2)(A), a creditor must establish the following five elements: 1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; 2) knowledge of the falsity or deceptiveness of the debtor's statement or conduct; 3) an intent to deceive; 4) justifiable reliance by the creditor on the debtor's statement or conduct; and 5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000). The creditor must prove each element of

§ 523(a)(2)(A) by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991).

On appeal, the debtor contends that the bankruptcy court erred in granting summary judgment because two elements under § 523(a)(2)(A) had not been met. Specifically, he argues that the Donovans failed to meet their burden of proof to establish the elements of knowledge and intent.

1. Knowledge of falsity and intent to deceive

When analyzing knowledge and intent, reckless disregard for the truth of the representation or reckless indifference to the debtor's actual circumstances may support a § 523(a)(2)(A) claim. Arm v. A. Lindsay Morrison, M.D., Inc. (In re Arm), 175 B.R. 349, 354 (9th Cir. BAP 1994)(citations omitted). See also Houtman v. Mann (In re Houtman), 568 F.2d 651, 656 (9th Cir. 1978), overruled in part on other grounds by Grogan v. Garner, 498 U.S. 279 (1991)(holding that "either actual knowledge of the falsity of a statement, or reckless disregard for its truth, satisfies the scienter requirement for nondischargeability of a debt under § 17(a)(2) [predecessor to § 523(a)(2)(A)]."); Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch), 237 B.R. 160, 167-68 (9th Cir. BAP 1999)(quoting Houtman, 568 F.2d at 656). Within the Ninth Circuit, the phrase "reckless indifference to his actual circumstances" is used interchangeably with the phrase "reckless disregard for the truth of a representation." Advanta Nat'l Bank v. Kong (In re Kong), 239 B.R. 815, 826 (9th Cir. 1999)(citations omitted). Both the knowledge and intent elements under § 523(a)(2)(A) may be established by circumstantial evidence and inferences drawn from a course of conduct. See Tallant v.

22

Kaufman (In re Tallant), 218 B.R. 58, 66 (9th Cir. BAP 1998).

When determining the knowledge element, "[a] representation may be fraudulent, without knowledge of its falsity, if a person making it is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented." Gertsch, 237 B.R. at 168 (quoting Restatement (Second) of Torts § 526 cmt. e (1977)(internal quotation marks omitted)). In such circumstances, the person makes the representation "without [believing] in its truth or recklessly, careless of whether it is true or false." Kong, 239 B.R. at 827 (quoting Restatement (Second) of Torts § 526 cmt. e).

When determining the intent element, recklessness alone does not equate to fraudulent intent; it is probative of intent only. See Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 174 (9th Cir. BAP 2007). Reckless conduct must involve more than simple or inexcusable negligence. Kong, 239 B.R. at 826. "The essential point is that there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors of the estate." Khalil, 379 B.R. at 175 (quoting Garcia v. Coombs (In re Coombs), 193 B.R. 557, 565-66 (Bankr. S.D. Cal. 1996)(internal quotation marks omitted)). That is, "the focus must be on 'the totality of the circumstances and whether they create the overall impression of a deceitful debtor.'" Nwas Okla., Inc. v. Kraemer (In re Kraemer), 2011 WL 3300360 at * 6 (9th Cir. BAP 2011) (quoting Wolf v. McGuire (In re McGuire), 284 B.R. 481, 493 (Bankr. D. Colo. 2002)).

23

### a. Knowledge of falsity

The debtor argues that there is no evidence that he knew or had reason to know that the Property was not subdivided properly at the time he sold it to the Donovans. He claims that the factual findings in the Consent Order are not determinative as to his knowledge concerning the subdivision of the Property because the issue had not been actually litigated. Instead, the debtor simply signed the Consent Order following negotiations with the ADRE. He further contends that nothing in the Settlement Agreement indicated that the debtor knew that the statement regarding the requirements of A.R.S. § 11-809 in the Affidavit was incorrect.

The debtor complains that there is no evidence showing that he knew or should have known that the Property was not subdivided properly. The Donovans provided the SPDS, the Affidavit and the Consent Order as evidence demonstrating the debtor's knowledge of the falsity of his representation concerning the Property's subdivision status. And the debtor did not proffer his own evidence to counter the Donovans' evidence.

Although the debtor denied "knowingly engaging in any wrongdoing with respect to the sale of the [Property]" in the Settlement Agreement, he nonetheless showed reckless disregard for the truth of his representation about the Property's subdivision status. This reckless disregard is discernable in his inconsistent statements in the SPDS and the Affidavit. In the SPDS, the debtor represented that, to his knowledge, the Property was not within a subdivision approved by the ADRE. But in the Affidavit, he stated, under penalty of perjury, that the

24

sale of the Property met "the requirements of A.R.S. § 11-809 regarding land divisions." (Mr. Donovan even testified at his deposition that he thought the Affidavit indicated that the Property was buildable.) These inconsistent statements show that the debtor was careless as to whether the Property was subdivided properly. The debtor's careless disregard for the truth of the representation regarding the Property's subdivision status satisfies the knowledge element under § 523(a)(2)(A). Based on the evidence before it, the bankruptcy court did not err in deciding in the Donovans' favor on the knowledge element under § 523(a)(2)(A).

### b. Intent to deceive

The debtor further contends that there is no evidence demonstrating that he intended to deceive the Donovans at the time he sold the Property to them. He stresses that there is no independent evidence that he fraudulently or recklessly made the inaccurate statement about the Property's subdivision status in the Affidavit to induce the Donovans to purchase the Property.

However, the debtor did not provide any evidence of his own, through affidavit or other admissible discovery material, showing that he lacked intent to deceive under § 523(a)(2)(A), even though he bore the production burden in his opposition to the Summary Judgment Motion. See Barboza, 545 F.3d at 707. If he had evidence (including his own declaration or affidavit) to raise a genuine issue of material fact as to his intent, the debtor should have presented it to the bankruptcy court. He presented no such evidence.

The debtor also argues that the bankruptcy court erroneously

25

relied on "an incorrect interpretation of state law [i.e., A.R.S. § 32-2181(D)] and the non-litigated findings contained in the Consent Order to establish that [the debtor] intended to deceive the Donovans when he filled out the [Affidavit]." Appellant's Opening Brief at 25.

For the first time on appeal, the debtor argues that the intent element in A.R.S. § 32-2181(D) does not apply to him. He points out that A.R.S. § 32-2181(D) specifically provides that,

> Unlawful acting in concert pursuant to this subsection with respect to the sale or lease of subdivision lots requires proof that the real estate licensee or other licensed professional knew or with the exercise of reasonable diligence should have known that property which the licensee listed or for which the licensee acted in any capacity as agent was subdivided land subject to this article.

According to the debtor, under A.R.S. § 32-2181(D), only real estate licensees or other licensed professionals are subject to the intent element. The debtor maintains that he is not a real estate licensee or other licensed professional. Because the intent element under A.R.S. § 32-2181(D) only applies to real estate licensees, which he is not, the bankruptcy court erred in relying on the Consent Order to find that the debtor intentionally deceived the Donovans within the meaning of § 523(a)(2)(A).

We deem this argument waived because the debtor did not raise it before the bankruptcy court. O'Rourke v. Seabord Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989). Moreover, even if he raised this argument before the bankruptcy court, whether or not the debtor was a real estate licensee is immaterial. The debtor explicitly admitted and agreed to be

bound by the findings in the Consent Order, including the finding that he conspired with others (at least one of whom held a real estate salesperson's license) to violate A.R.S. § 32-2181(D).

Further, as we explained above, the debtor showed reckless disregard for the truth of his representation concerning the Property's subdivision status based on his inconsistent representations in the Affidavit and the SPDS. The bankruptcy court thus did not err in granting summary judgment in the Donovans' favor on the intent element under § 523(a)(2)(A).

**CONCLUSION**

For the foregoing reasons, we AFFIRM.